# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2021

_____

United States of America,

        Appellee,

v.

Glenn R. Nichols,

        Appellant.

\*
\*
\*
\*
\* Appeal from the United States
\* District Court for the
\* Eastern District of Missouri.
\*     [PUBLISHED]
\*
\*

_____

Submitted: September 10, 2003

Filed: September 23, 2003

_____

Before LOKEN, Chief Judge, and HEANEY and RICHARD SHEPPARD ARNOLD, Circuit Judges.

_____

PER CURIAM.

Glenn R. Nichols was charged with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), after a search of his residence turned up three guns and other contraband. He moved to suppress evidence obtained during the

search. The district court[1] referred the matter to a magistrate,[2] who recommended that the motion be denied. The court adopted the magistrate's report and recommendation. Nichols then conditionally pled guilty, reserving the right to appeal the denial of his motion to suppress. He was sentenced to 188 months imprisonment. On appeal, he contends that: 1) the warrant supporting the search did not extend to his separate living area, and thus the search of his room was unconstitutional; 2) the searching officers did not comply with the "knock and announce" requirement before breaking down the door of the residence; 3) the seizure of the guns in his room was not permitted because the guns were not listed in the warrant; and 4) the officers did not fill out a "return and inventory" form with enough detail to withstand constitutional scrutiny. We affirm.

## BACKGROUND

On October 11, 2001, a detective with the Rock Hill Police Department made application for a warrant to search 9380 Golden Gate, a single family residence in Rock Hill, Missouri. In an affidavit in support of the warrant, the detective stated that a confidential informant he had worked with for two years saw Glenn Nichols sell cocaine to people from inside this house. According to Nichols's parole officer, Nichols lived at this house with his aunt. The confidential informant made three controlled buys from Nichols, all of which took place inside the residence.

Based on the application, a search warrant was issued to search for cocaine and drug paraphernalia at Nichols's residence. The warrant described the residence as:

---

[1]The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

[2]The Honorable Audrey G. Fleissig, United States Magistrate Judge for the Eastern District of Missouri.

One story single family dwelling with yellowish shingle siding, white window trim, white front storm door, white front entrance door, white mailbox to left of front door, numerical address 9380 above mailbox, white gutterson [sic] front of residence, west side white entrance door and white storm door with side porch/walkway area with white metal handrailing. East side enclosed breezeway type area with double white aluminum entrance door and windows with white trim, black shingled roof, brick chimney east side, east side carport, attached rear garage converted into room, known and numbered as 9380 Golden Gate in the City of Rock Hill, County of St. Louis and State of Missouri.

(Appellant's Add. at 20.)

On October 18, 2001, at about seven in the morning, a team of officers executed the search warrant. They surrounded the outside of the house and approached the west door, which the officers understood to be the one used most often. Officers knocked on the door, announced they were police officers, and asked that the door be opened. There was no reply. After at least twenty seconds, the officers forced open the door and went inside. Once inside, they announced their presence and that they had a search warrant. They came in contact with three people, one of whom informed them that Nichols had left a few minutes earlier and was not home. The officers were also told that Nichols lived in the attached garage, which had been converted into a room.

The door to Nichols's room was locked. One of the officers knocked on the door, yelled they were the police and had a search warrant, and requested the door be opened. There was no reply. The executing officers then forced open the door and entered the room. Once inside, the officers found a variety of suspected contraband in plain view, including marijuana, ecstacy, brown vials, pills, powders, drug

paraphernalia, two loaded pistols, one unloaded rifle, and ammunition. Nichols was subsequently indicted in district court for being a felon in possession of a firearm.[3]

Nichols moved to suppress the evidence seized during execution of the warrant. According to him, his room in the house was actually his apartment, "1G," and was separate from the rest of the house. Thus, the warrant should have specified his apartment number and failure to do so made the search of his room warrantless and unconstitutional. He also argued that the police did not wait long enough before forcing their way into the residence, violating the "knock and announce" rule and invalidating the search. He also claimed that seizure of the firearms was not permitted because they were not listed in the warrant, and that the "return and inventory" form left at his residence was deficient. The district court referred the matter to a magistrate who, after two hearings on the matter, recommended that the motion be denied. The district court agreed and adopted the magistrate's report and recommendation. Nichols entered a conditional guilty plea, reserving his right to appeal the denial of his motion to suppress. He was sentenced to 188 months, and this appeal followed.

## ANALYSIS

All of Nichols's claims concern the denial of his motion to suppress evidence. "We will uphold the district court's denial of a motion to suppress unless it rests on clearly erroneous findings of fact or reflects an erroneous view of the applicable law." United States v. Rogers, 150 F.3d 851, 855 (8th Cir. 1998).

---

[3]According to the presentence report, Nichols is also facing several state charges relating to this incident.

## I. PARTICULARITY OF THE SEARCH WARRANT

Nichols contends that the search warrant lacked the requisite particularity to extend to his separate room, and thus the search of his room was warrantless and unconstitutional. In order to determine if a warrant sufficiently describes the place to be searched, we consider whether the warrant would "enable the executing officer to locate and identify the premise with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." United States v. Gitcho, 601 F.2d 369, 371 (8th Cir. 1979). "The authority to search granted by any warrant is 'limited to the specific places described in it and does not extend to additional or different places.'" United States v. Pennington, 287 F.3d 739, 744 (8th Cir. 2002) (quoting United States v. Alberts, 721 F.2d 636, 639 (8th Cir. 1983)). When a warrant specifically mentions certain structures, it authorizes the search of those structures and any other property not noticeably separated from them. Id.

Nichols claims that he was living in an apartment completely separate from the rest of 9380 Golden Gate. For support, he directs us to two documents from the Missouri Department of Revenue listing his address as "9380 Golden Gate Rd Apt 1G," and notes that he paid rent for his room and kept a separate lock on his door. While these facts alone would suggest that Nichols's room was a separate apartment, other facts point to an opposite conclusion: there were no markings on his doors listing it as an apartment, it was only a room without a kitchen or bathroom, and the post office did not have any apartments registered at that address.

Even if we did consider Nichols's room as a separate apartment, we cannot say that its search was not supported by the warrant. The search warrant authorized the search of the residence at 9380 Golden Gate, and specifies that the area to be searched included the "attached rear garage converted into room." (Appellant's Add. at 20.) The description of a garage converted to a room was sufficient to inform the

-5-

searching officers as to what area to search, particularly in light of the scant evidence that Nichols's room was known by any other name or description.

## II. KNOCK AND ANNOUNCE

Nichols next asserts that the search warrant was executed in an unconstitutional fashion because the officers did not wait long enough after announcing their presence before forcing their way into the house. Whether and how officers announce their presence before entering a residence are factors we consider when determining if a search was reasonably executed. Wilson v. Arkansas, 514 U.S. 927, 930 (1995). "The need to force entry may result from danger to the safety of the entering officers or from the imminent destruction of evidence." United States v. Goodson, 165 F.3d 610, 614 (8th Cir. 1999) (quoting United States v. Lucht, 18 F.3d 541, 549 (8th Cir. 1994)).

It is difficult to ascertain which "knock and announce" Nichols is contesting: the one at the door to the residence, or the one at the door to his locked room. Nonetheless, in both cases the circumstances indicate that the officers did not act in an unconstitutional manner. The evidence adduced at the suppression hearing indicated that the officers announced their presence and that they had a search warrant, and requested that the parties inside open the door. After a wait of at least twenty seconds, they forcibly opened the door. They then continued to announce their presence and speak loudly once inside the residence. Before opening Nichols's locked door, the officers again announced their presence, their purpose, and requested entry. Although Nichols argues that the officers should have waited longer because the search was executed at about seven in the morning, this alone does not render the officers' conduct unreasonable. This is particularly true in the circumstances presented in this case, which involved the search for and seizure of cocaine, evidence that could be easily disposed of or destroyed. Accord Goodson, 165 F.3d at 614

(finding wait of twenty seconds reasonable before entering one-story ranch house to seize crack due to possible destruction of evidence).

## III.   SEIZURE OF THE FIREARMS

Nichols next claims that the officers exceeded the scope of the warrant by seizing items, specifically guns, not listed in the warrant. "A lawful search extends to all areas and containers in which the object of the search may be found." United States v. Schmitz, 181 F.3d 981, 988 (8th Cir. 1999) (quoting United States v. Hughes, 940 F.2d 1125, 1127 (8th Cir. 1991)). The officers found three guns under Nichols's mattress. While the search warrant did not authorize the officers to look for firearms, it did mandate the search for cocaine and drug-related equipment. Given the object of the search, it was not unreasonable for the officers to look under Nichols's mattress.

Nichols argues that even if the officers were permitted to search under the mattress, they were not permitted to seize the guns because they were not listed in the warrant. Under the plain view doctrine, however, officers may seize an item if they have a lawful right of access to the item seized and the object's incriminating nature is immediately apparent. United States v. Collins, 321 F.3d 691, 694 (8th Cir. 2003). The incriminating nature of the guns was immediately apparent, as they were in close proximity to a plethora of drugs and drug-related equipment, see United States v. Hatten, 68 F.3d 257, 261 (8th Cir. 1995) (holding incriminating nature of items is immediately apparent if officer has probable cause to associate it with criminal activity), and also because the officers were aware of Nichols's prior criminal record, likely making him ineligible to possess the firearms. As such, the fact that the guns were not specifically listed for seizure by the warrant does not lead us to conclude they should have been suppressed.

## IV.  THE "RETURN AND INVENTORY" LIST OF ITEMS SEIZED

Lastly, Nichols argues that the officers failed to provide a comprehensive inventory of the items seized as required by the Federal Rules of Criminal Procedure.[4] Rule 41 requires the officers to prepare and leave a receipt of any property seized during the search.

We first note that the inventory list left at the scene is fairly detailed and includes the guns that resulted in the instant conviction.  Thus, it is likely in compliance with the requirements of Rule 41.  Even if the list were deficient, however, Nichols cannot prevail.  Where executing officers fail to abide by the dictates of Rule 41, suppression is only required if a defendant can demonstrate prejudice.  United States v. Freeman, 897 F.2d 346, 347 (8th Cir. 1990).  Nichols does not argue to this court that he was prejudiced by the claimed inadequacies in the list.  He rather argues that suppression is required to protect the integrity of court-ordered searches and the unlawful taking of property.  These principles do not establish that he was prejudiced, and he is thus entitled to no relief.

## CONCLUSION

For the reasons stated herein, we affirm the district court's denial of Nichols's suppression motion.

_____

---

[4]At the time of the search, the officers were required by Federal Rule of Criminal Procedure 41(d) to provide an inventory of the items seized.  This requirement still exists, but the Rule has been amended and the relevant section is now 41(f).