# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2587

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| William Douglas Montgomery, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 11, 2008
Filed: June 6, 2008

_____

Before WOLLMAN, JOHN R. GIBSON, and SHEPHERD, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

William Douglas Montgomery pleaded guilty to two counts of possession of a firearm by an unlawful user of controlled substances, in violation of 18 U.S.C. § 922(g). Having reserved his right to do so, Montgomery appeals from the district court's[1] denial of his motion to suppress the evidence seized during two searches of

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

his residence, the denial having been recommended by a magistrate judge[2] following a hearing on the matter. We affirm.

## I. Background

On March 1, 2005, Jerry Lawson, a private citizen, contacted Scott Richardson, a Missouri State Highway Patrol trooper, to report that Montgomery had taken his Jeep Cherokee without permission. Lawson produced proof of ownership and took Richardson and a Mountain Grove, Missouri, police officer, Danny Bledsoe, to Montgomery's residence. No one was home, so after verifying the vehicle identification number on the Jeep, Richardson took Lawson to Mountain Grove to file a report while Bledsoe kept the property under surveillance. Montgomery returned, demonstrated his control over the Jeep by moving it, and entered the house. Shortly thereafter, he made several trips from his house to a Dodge Durango parked in his driveway. Bledsoe was some distance away, and it appeared to him that Montgomery was unloading items from the Durango and also possibly loading other items into it. In moving between the house and the vehicle, Montgomery frequently looked at the road and ran crouched low to the ground as if worried about being observed. A woman who was later identified as Christi Gabel then got in the truck and reclined the passenger seat as if hiding while Montgomery drove the two of them away. Bledsoe stopped Montgomery on suspicion of having stolen the Jeep. While they waited for Richardson to arrive, Bledsoe believed that he saw Montgomery surreptitiously hand something to Gabel. Richardson arrested Montgomery on the stolen vehicle charge. Montgomery claimed that he had been gone all day and had not seen the Jeep, which Richardson knew to be false. Gabel and the Durango were searched. Gabel was initially found with a marijuana roach. She was later searched more thoroughly and was found to possess two bags of marijuana, one bag of white powder that field-tested

---

[2]The Honorable James C. England, Chief United States Magistrate Judge for the Western District of Missouri.

positive for cocaine, a straw, two pipes, several empty plastic baggies, four spoons, a bag of white paper, one unopened and six opened syringes, cotton swabs, and four generic Xanax pills. Bledsoe included this information in an affidavit, and a warrant was issued that evening to search Montgomery's residence, including the outbuildings and vehicles on the premises, for drugs and drug paraphernalia and for the stolen Jeep. The search yielded illegal drugs, drug paraphernalia including syringes with the same lot number as those found on Gabel, and a .45 caliber pistol. Several shotguns and a rifle were found but not seized. The .45 pistol formed the basis of the first count to which Montgomery pleaded guilty.

While Montgomery was driving in Springfield, Missouri, on March 17, 2005, he was stopped by police for crossing the center line. Two local law enforcement officers had been following him, one of whom had been asked by an agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives to follow Montgomery. Gabel was again Montgomery's passenger. Both parties consented to a search of their persons and the vehicle, which revealed a baggie of methamphetamine and a baggie of cocaine in the vehicle, each containing approximately two grams. Gabel possessed some methamphetamine and drug paraphernalia on her person. Montgomery admitted that he was a methamphetamine user, that he had purchased some for purely personal use, and that he had used it the previous night. Gabel stated that Montgomery was returning to his home later that day. This information was placed in an affidavit for a warrant for a second search of Montgomery's home. The affidavit noted that the earlier search had uncovered drugs, drug paraphernalia, and guns. Additionally, the affidavit incorrectly stated that Montgomery had been arrested for possession and distribution of a controlled substance on March 1, 2005. The affiant testified at the suppression hearing that another officer had told him about the March 1 arrest and that he had included that information in the affidavit without further verifying it. Montgomery's rifle and shotguns were seized during the execution of the second warrant and formed the basis of the second count to which Montgomery pleaded guilty.

## II. Probable Cause

A judge's finding of probable cause to support the issuance of a search warrant is afforded great deference on review. United States v. Caswell, 436 F.3d 894, 897 (8th Cir. 2006); Illinois v. Gates, 462 U.S. 213, 236 (1983). We will not upset a judicial finding of probable cause unless there was no substantial basis for that finding. Caswell, 436 F.3d at 897-98.

"For a search warrant to be valid, the warrant must be based upon a finding by a neutral and detached judicial officer that there is probable cause to believe that evidence, instrumentalities or fruits of a crime, [or] contraband . . . may be found in the place to be searched." United States v. Proell, 485 F.3d 427, 430 (8th Cir. 2007) (internal quotation omitted). Probable cause means a "fair probability" that the object of the search warrant may be found in the place to be searched. Id. (quoting Gates, 462 U.S. at 238). This determination is made by considering the totality of the circumstances. Caswell, 436 F.3d at 897.

Montgomery first argues that the March 1 affidavit was insufficient to establish probable cause that drugs would be found at his residence because the affidavit does not allege that contraband was actually seen at Montgomery's residence or that any contraband was found in his vehicle or on his person. True enough, but Montgomery was observed making several trips between his house and his vehicle during which he appeared to be trying to avoid observation. He also either retrieved or hid something underneath his vehicle. When he and Gabel left his residence, Gabel immediately reclined her seat as if attempting to avoid being seen. After being searched, Gabel was found with illegal drugs and a variety of drug paraphernalia. Regardless of whether the drugs in Montgomery's residence belonged to him or to Gabel, the circumstances created a fair probability that drugs were located in his residence and vehicles.

Montgomery next argues that the March 17 affidavit was insufficient to establish probable cause that drugs would be found at his residence. That affidavit noted that Montgomery had been found driving with a baggie of cocaine and a baggie of methamphetamine. Gabel, again his passenger, said that he was dropping her off and then returning to his home. Montgomery admitted to being a user of methamphetamine and that he had recently purchased some. The affidavit further noted the recent search of his residence, which had resulted in the seizure of illegal drugs and drug paraphernalia. These facts established a fair probability that drugs would be found at Montgomery's residence.

Montgomery argues that the information gained from the first search warrant should not be considered as support for the March 17 warrant because the first search was invalid. Because we have determined that the first search was not invalid, it was permissible to use the information derived therefrom in the March 17 warrant application.

Montgomery also argues that the March 17 affidavit was insufficient to create probable cause because it contained a materially false statement. A warrant is invalid if the affiant knowingly includes a material misstatement or includes a statement with reckless disregard for its falsity, and if the affidavit would not support a finding of probable cause if the false information were omitted. United States v. Davis, 471 F.3d 938, 946 (8th Cir. 2006) (citing Franks v. Delaware, 438 U.S. 154, 155-56 (1978)). As indicated earlier, the affidavit for the March 17 warrant included the erroneous statement that Montgomery had been arrested for possession and distribution of a controlled substance on March 1. Notwithstanding the inclusion of this statement, and as noted by the magistrate judge, the factually correct information within the affidavit supports a finding of probable cause.

### III.  Scope of the Searches

We review *de novo* whether a search violated the Fourth Amendment.  United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007).

Montgomery's final argument is that the seizure of the guns exceeded the scope of the search because the search warrants did not include firearms and because the handgun seized in the first search was found in a vehicle on the premises, not in the house.  Police may lawfully search all buildings, containers, and vehicles on the property to be searched in which the contraband sought might be found.  United States v. Gamboa, 439 F.3d 796, 807 (8th Cir. 2006); United States v. Nichols, 344 F.3d 793, 798 (8th Cir. 2003) (per curium).  Under the plain view doctrine, officers may seize objects if they are lawfully present where the object is seen and if the incriminating nature of the object is immediately obvious.  Nichols, 344 F.3d at 799.  The incriminating nature of guns in close proximity to drugs and drug paraphernalia is immediately obvious.  Id.  In Nichols, we upheld the seizure of guns that were discovered during a lawful search for drugs.  Id. at 798-99.  Similarly, officers in this case discovered the weapons, the incriminating nature of which was immediately obvious, during the lawful search for drugs and drug paraphernalia.

### IV.  Conclusion

The issuing judge possessed a substantial basis for signing the search warrants, and neither search exceeded its scope.  The judgment is affirmed.

_____