# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2172

_____

United States of America

*Plaintiff - Appellee*

v.

Freddie Wallace

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 15, 2013
Filed: April 25, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Freddie Wallace guilty of one count of production of child pornography in violation of 18 U.S.C. § 2251(a) and one count of possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). The district court[1] sentenced

_____

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas.

Wallace to 265 months' imprisonment on the production of child pornography count and a concurrent 120 months' imprisonment on the possession of child pornography count. Wallace appeals his convictions, challenging the admission into evidence of his written confession, a videotape seized from his home, and testimony of a former cellmate. He also challenges the sufficiency of the evidence to support his conviction for the production charge. We affirm.

## I.    Background

In February 2009, a confidential informant contacted the Wynne, Arkansas police department to allege sexual misconduct by Wallace towards her infant daughter. The informant also alleged that Wallace possessed a videotape recording of himself molesting another underage female. After a medical examination of the infant daughter proved inconclusive, the officers decided not to pursue the complaint at that time. On September 25, 2009, the informant brought the officers a videotape she claimed to have removed from Wallace's home. The videotape depicted Wallace moving the clothes of sleeping minor females to expose their breasts and genital areas. One segment showed Wallace fondling one of the minor females. The officers were able to match the face in the video to a copy of Wallace's driver's license photograph, and voices in the background can be heard calling Wallace's name. The informant also told the officers that a maroon-colored suitcase in Wallace's spare bedroom contained additional sexually explicit material involving minors.

Based on this information, the officers obtained a search warrant for Wallace's home. In the course of executing the warrant on September 28, 2009, the officers seized a maroon-colored suitcase containing numerous sexually explicit images and videotape recordings of minors. One of the videotapes showed an adult male touching a naked minor female, later identified as M.J., in the genital area. The officers interviewed M.J., who confirmed that Wallace filmed the video and touched her in the video.

Following the interview with M.J., the officers arrested Wallace. Wallace agreed in writing to waive his *Miranda* rights and agreed to be interviewed by Detective Howard Smith and Secret Service Agent Bryan Perugini. Wallace accurately told the officers where he lived and stated that he was a certified nursing assistant. Based on these statements and Wallace's demeanor, the officers believed Wallace to be competent. Detective Smith testified that Wallace was very cooperative and apologetic throughout the interview and that the officers made no use of threats, coercive tactics, or promises of leniency. Wallace admitted to the detectives that he had filmed the videos, identified himself as the individual touching the underage females, and prepared a handwritten statement in confirmation. The district court denied Wallace's motion to suppress his confession as involuntary.

At trial, the Government introduced testimony from Sergio Berber, Wallace's former cellmate. Berber testified that Wallace told him details about the sexually explicit videos he made with underage females. At the time of trial, Berber was incarcerated for a conviction arising from a 2008 methamphetamine conspiracy. Berber had contacted his attorney to see if he could cooperate in the case against Wallace and was told that, due to a prior sentence reduction for his cooperation in the methamphetamine case, he would be unlikely to receive a sentence reduction for cooperating against Wallace. Berber testified that he did not receive anything in exchange for his testimony. Wallace did not object to Berber's testimony at trial.

On appeal, Wallace argues that the district court erred in (1) denying the motion to suppress his confession, (2) admitting into evidence the videotapes seized from Wallace's house because there was no probable cause for the search warrant, and (3) admitting the testimony of Berber because he was not reliable. Wallace also argues that (4) there was insufficient evidence to support his conviction for production of child pornography.

## II.    Discussion

### A.    Admission of Wallace's Confession

Wallace argues that his confession was involuntary.  "We affirm a denial of a motion to suppress unless the district court's decision 'is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made.'" *United States v. Bay,* 662 F.3d 1033, 1035 (8th Cir. 2011) (quoting *United States v. Annis,* 446 F.3d 852, 855 (8th Cir. 2006)).  We review the district court's findings of fact for clear error and its legal conclusions *de novo.  Id.*  "To determine whether a confession is voluntary, we look at 'the totality of the circumstances, examining both the conduct of the officers and the characteristics of the accused.'" *United States v. Vega,* 676 F.3d 708, 718 (8th Cir. 2012) (quoting *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011)).  We will consider, among other things, "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *Id.* (quoting *Boslau,* 632 F.3d at 428).

Wallace now claims that he wanted to ask for an attorney but was pressured into signing the confession. He argues that neither officer present during the confession inquired into Wallace's background, intelligence, or mental state, and that because there is no video or audio recording of the confession, the officers' testimony regarding his competency is mere speculation.

The district court based its denial of Wallace's motion to suppress on the following facts.  Wallace testified at the suppression hearing that he knew he had the right to counsel throughout his interview.  After being read a waiver of *Miranda* rights form, Wallace signed the form, which explicitly stated that he was influenced by no promises, threats, or coercion of any kind.  He then wrote a detailed confession. Wallace also accurately told the detectives where he lived and that he worked as a

-4-

certified nursing assistant, indicating that he was competent to respond to questions. Detective Smith testified that there were no threats or promises made to Wallace at any time and that Wallace was very cooperative, responsive, and apologetic, while Agent Perugini corroborated Detective Smith's testimony. *See United States v. Carothers,* 337 F.3d 1017, 1019 (8th Cir. 2003) (noting that a district court's "credibility determinations are 'virtually unreviewable on appeal'") (quoting *United States v. Hernandez*, 281 F.3d 746, 748 (8th Cir. 2002)).

The district court carefully considered the totality of the circumstances in finding that Wallace's confession was made knowingly, intelligently, and voluntarily, and we discern no error. We therefore affirm the denial of Wallace's motion to suppress his confession.

## B. Admission of the Videotape

Wallace argues that the district court erred in admitting the videotape seized from his home because the Government lacked probable cause to search his home. "A search warrant is valid under the Fourth Amendment if it is supported by probable cause." *United States v. Stevens,* 530 F.3d 714, 717-18 (8th Cir. 2008). A district court's finding of probable cause to support a search warrant is "afforded great deference on review." *United States v. Montgomery,* 527 F.3d 682, 686 (8th Cir. 2008). We will not upset a district court's finding of probable cause "unless there was no substantial basis for that finding." *Id.* When assessing probable cause based on information supplied by an informant, "[t]he core question . . . is whether the information is reliable." *United States v. Williams,* 10 F.3d 590, 593 (8th Cir. 1993). "Information may be sufficiently reliable to support a probable cause finding if . . . it is corroborated by independent evidence." *Id. "*If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable." *Id.*

-5-

Wallace claims that the informant was unreliable based on her criminal history, the fact that he had thrown her out of his house for failing to pay bills, and the fact that she never previously had provided the government with reliable information leading to a conviction. However, most of the informant's information was corroborated through independent evidence. For example, the informant first claimed that a videotape existed that would show Wallace engaging in sexually explicit conduct with an underage female and then was able to deliver such a videotape. Moreover, the officers matched the face in the videotape to an independent copy of Wallace's driver's license photograph. Because there was independent corroboration of the videotape contents, it was permissible to infer that other information provided by the informant, including the location of additional material in the maroon-colored suitcase, was reliable, establishing probable cause for the warrant. The district court therefore did not err in admitting the videotape seized from Wallace's home.

## C.    Admission of Berber's Testimony

Wallace argues for the first time on appeal that the district court erred in admitting Berber's testimony because Berber acted as a government informant and was unreliable based on his criminal history. Because this argument was not properly preserved before the district court, we review for plain error and will reverse only if Wallace can show that the district court committed a clear and obvious error that affected both his substantial rights and the fairness, integrity, or public reputation of the judicial process. *See United States v. Ali*, 616 F.3d 745, 751-52 (8th Cir. 2010). To demonstrate an effect on his substantial rights, a defendant is generally required to show "a reasonable probability that the outcome would have been different absent the alleged error." *United States v. Yielding*, 657 F.3d 688, 707-08 (8th Cir. 2011), *cert. denied*, 565 U.S. ---, 132 S. Ct. 1777 (2012).

Wallace does not offer any evidence in support of his assertion that Berber acted as a government informant. Berber testified that he was not promised anything

in exchange for his testimony. In fact, Berber already had received a sentence reduction for his cooperation in a prior case and was told any further reduction would be unlikely. Wallace simply points to Berber's "continuing relationship" with the government to speculate that Berber acted as a government informant. Berber was otherwise competent to testify under Federal Rule of Evidence 601.[2] With respect to Wallace's argument that Berber's credibility was in doubt based on his criminal history, we note that credibility determinations are left to the jury. *See United States v. Reddest,* 512 F.3d 1067, 1071 (8th Cir. 2008).

Moreover, even if the testimony should have been excluded, Wallace has not shown that admission of the testimony affected his substantial rights. Apart from Berber's testimony, the Government presented substantial evidence that Wallace recorded and possessed sexually explicit material involving minors, including the videotape itself, testimony from M.J., and Wallace's signed confession. Wallace has failed to show a "reasonable probability that the outcome would have been different absent the alleged error." *Yielding*, 657 F.3d at 707-08. We therefore find that there was no plain error entitling Wallace to relief.

### D.    Sufficiency of the Evidence

Wallace challenges the sufficiency of the evidence for his production of child pornography conviction. "We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Yarrington,* 634 F.3d 440, 449 (8th Cir. 2011) (quoting *United States v. Scofield,* 433 F.3d 580, 584-85 (8th Cir. 2006)). In order to convict a defendant under 18 U.S.C. § 2251(a), the Government must prove, *inter alia*, that

---

[2]Rule 601 of the Federal Rules of Evidence provides that "[e]very person is competent to be a witness unless these rules provide otherwise."

the child named in the indictment was under the age of eighteen during the time period alleged in the indictment, that the defendant acted with the purpose of producing a visual depiction of the conduct, and that the materials used to produce the visual depiction were mailed, shipped, or transported, including by computer, in interstate or foreign commerce. *See United States v. Pierson,* 544 F.3d 933, 938 (8th Cir. 2008). Wallace argues that the Government failed to present sufficient evidence that (1) the video was produced on the date specified in the indictment; (2) the materials used to produce the video traveled in interstate commerce; and (3) Wallace acted with the purpose of producing the video.

The indictment charges the production occurred "[f]rom in or about March 18, 2006 through in or about March 18, 2009." At trial, Wallace's nephew, who was present during the recording, testified that he was nineteen at the time of trial, September 2011, and that he was sixteen or seventeen at the time of the recording. M.J. testified that she was sixteen at the time of the trial, and that she was twelve or thirteen at the time of the recording. The district court gave "on or about" jury instructions, which permitted the jury to find that the crime occurred reasonably near the dates alleged in the indictment. *See United States v. Brody,* 486 F.2d 291, 292 (8th Cir. 1973). This constitutes sufficient evidence to support the jury's finding on this element.

There also was sufficient evidence that the sexually explicit video of M.J. was produced using materials that traveled in interstate commerce. The Government introduced testimony from Steven Tice, senior manager of quality assurance engineering at Sony, the manufacturer of the videotape. Based on Sony's business records for the production code on the videotape, Tice testified that the videotape was assembled in China and then shipped to the Los Angeles area before arriving in Arkansas. This testimony sufficiently supports the jury's finding on the interstate commerce element. We reject Wallace's argument that there must be evidence that both the film and camera were transported through interstate commerce. *See United*

*States v. Hampton,* 260 F.3d 832, 834-35 (8th Cir. 2001) (upholding a conviction under § 2251(a) based on proof that the videotape alone traveled in interstate commerce prior to its use in the recording of a sexually explicit video involving a minor).[3]

Finally, the Government presented sufficient evidence that Wallace acted with the purpose of producing the video. The testimony of both Wallace's nephew and M.J., along with Wallace's signed confession and the videotape itself, were more than sufficient to establish that Wallace intended to produce a video recording of the incident.

Accordingly, the evidence presented at trial was sufficient to support the jury's verdict.

## III.  Conclusion

For the foregoing reasons, we affirm.

_____

---

[3]Wallace cites *United States v. Hoggard,* 254 F.3d 744, 746 (8th Cir. 2001), in which we stated that to convict a defendant under 18 U.S.C. § 2251(b), "[t]he government must also show that the picture was produced using materials (here, film and a camera) that had been transported in interstate commerce." However, we made this statement in the context of affirming the constitutionality of the statute under the commerce clause, not in determining the sufficiency of the evidence. *Id.* The cited statement did not suggest proof that both the film and camera traveled in interstate commerce is required in every case, but rather it merely noted that both the film and camera had been transported in interstate commerce in that case.