IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 110,439

STATE OF KANSAS,
*Appellee,*

v.

CAMERON HOWARD,
*Appellant.*

SYLLABUS BY THE COURT

1.

In reviewing the granting or denial of a motion to suppress evidence, an appellate court determines whether the factual findings underlying the trial court's suppression decision are supported by substantial competent evidence. The appellate court does not reweigh the evidence or reassess the credibility of the witnesses. The ultimate legal conclusion drawn from those factual findings is reviewed under a de novo standard.

2.

The Fourth Amendment to the United States Constitution, applicable to the States via the Fourteenth Amendment, establishes the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches. Section 15 of the Kansas Constitution Bill of Rights provides identical protection. If conduct is prohibited by one, it is prohibited by the other.

3.

A warrantless search is per se unreasonable, and the fruits of that search inadmissible, unless the search falls within one of the established exceptions to the search warrant requirement. Those exceptions are consent; search incident to a lawful arrest;

1

stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses.

4.

When probable cause and an exigent circumstance are present, an officer may perform a warrantless search of a car without violating the Fourth Amendment.

5.

Exigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband.

6.

For Fourth Amendment purposes, the mobility of a vehicle fulfills the requirement of exigent circumstances, so that a warrantless vehicle search is permitted based solely on probable cause.

7.

Probable cause to search a vehicle exists when the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or evidence of a crime.

8.

When analyzing the totality of the circumstances, an appellate court will consider all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.

Review of the judgment of the Court of Appeals in 51 Kan. App. 2d 28, 339 P.3d 809 (2014). Appeal from Johnson District Court; JAMES FRANKLIN DAVIS, judge. Opinion filed March 10, 2017. Judgment of the Court of Appeals affirming the district court is affirmed. Judgment of the district court is affirmed.

*Craig M. Divine*, of Divine Law Office, LLC, of Kansas City, Missouri, and *Clayton E. Gillette*, of Gillette Law Office, LLC, of Kansas City, Missouri, argued the cause and were on the briefs for appellant.

*Jacob M. Gontesky*, assistant district attorney, argued the cause, and *Steven J. Obermeier*, assistant district attorney, *Stephen M. Howe*, district attorney, and *Derek Schmidt*, attorney general, were with him on the briefs for appellee.

*Per Curiam*:  Cameron Howard was convicted of criminal possession of a firearm by a convicted felon. The Court of Appeals affirmed his conviction, and we granted review.

FACTS

The relevant facts are uncontested. On October 19, 2006, Cameron Howard pled guilty to one count of "Burglary First Degree, Class B Felony" in the circuit court of Jackson County, Missouri. Howard was then adjudged guilty by the Missouri court. Following the plea and adjudication, the court ordered that the "imposition of sentence be suspended and [the] defendant is placed on probation for a period of three (3) years . . . ." In *Yale v. City of Independence*., 846 S.W.2d 193, 196 (Mo. 1993), the Missouri Supreme Court held that a "suspended imposition of sentence" does not constitute a conviction under Missouri law.

3

On October 17, 2008, the Missouri court determined that Howard had successfully completed his probation and discharged him from the court's jurisdiction. It further ordered that the file be "a closed record to the extent provided by law," as prescribed by Mo. Rev. Stat. § 610.105.1.

Nearly 3 years later, on September 15, 2011, Police Officer Chad Loughman was near 7720 State Line Road in Prairie Village, Johnson County, Kansas, looking for drivers who would pull into a gas station parking lot to avoid a traffic light—a traffic violation in Prairie Village. Loughman observed Howard pull into the parking lot and then out of it, effectively avoiding the traffic light. Loughman also noticed that Howard and his passenger had the shoulder straps of their seatbelts behind them, leading him to believe that they were not properly wearing the belts.

Loughman pulled Howard over and asked for his identification. At this time, Loughman saw that the passenger had reclined her seat since he had first seen the vehicle. Loughman called in Howard's identification to dispatch, which informed him that there was a warrant for Howard's arrest from Leawood Municipal Court. After learning of the warrant, Loughman called for backup, and Sergeant James Carney came to the scene.

After Carney arrived, Loughman had Howard step out of the car and stand at the rear passenger's door with Carney. Loughman then scanned the car, looking underneath Howard's seat for a weapon. Loughman found no weapons but discovered a plastic baggie with a ripped out corner in the center console. Loughman then secured Howard in the back of Carney's police car and told Howard he was being put under arrest pursuant to the Leawood warrant.

Loughman then took the passenger's identification and learned from dispatch that there was a warrant for her arrest from Prairie Village Municipal Court. Loughman had

4

the passenger step out of the car and, because she was pregnant, had her sit on the curb about 6 to 8 feet away from the car.

After removing the passenger, Loughman moved the passenger seat forward and found a firearm, subsequently classified in the record as an AK-47 pistol, that was concealed under a floor mat. It is unclear exactly where the weapon was located in the car because the officer testified that the firearm was concealed by "[t]he driver's side rear floormat" and the "front passenger seat, that floormat."

After finding the firearm, Loughman *Mirandized* Howard. Loughman then asked Howard about the plastic baggie. Howard responded that the baggie had previously held marijuana.

Howard was subsequently charged with criminal possession of a firearm by a convicted felon under K.S.A. 2011 Supp. 21-6304(a)(2) for possession of a firearm within 5 years after having been convicted of a felony under the laws of another state. The charge was based on the AK-47 found in Howard's car on the day of the traffic stop and on the prior Missouri burglary charge.

Before Howard's trial, both he and the State filed a number of motions. Howard filed a motion to dismiss, arguing that the Missouri judgment was not a conviction and thus he could not be convicted under K.S.A. 2011 Supp. 21-6304. Howard also filed a motion to suppress any evidence related to his possession of the firearm because the evidence was obtained through a warrantless search of his car. Finally, the State filed a motion in limine requesting that the court preclude Howard from "introducing evidence that [Howard] legally purchased the firearm in the state of Missouri or any federal records pertaining [to] the purchase of the firearm."

After hearing arguments regarding the parties' motions, the district court granted the State's motion in limine and denied Howard's motion to dismiss and his motion to suppress evidence.

On May 31, 2013, Howard waived his right to a jury trial and the district court held a bench trial on stipulated facts. The court entered a guilty verdict and sentenced Howard to 18 months of probation. Howard timely appealed to the Court of Appeals, which affirmed the conviction. *State v. Howard*, 51 Kan. App. 2d 28, 339 P.3d 809 (2014).

In his petition for review, Howard raised three arguments: (1) He cannot be guilty of criminal possession of a firearm by a convicted felon because a completed Missouri suspended imposition of sentence (SIS) is not a conviction and he therefore was not a convicted felon; (2) his firearm should have been suppressed as evidence because it was obtained through an illegal search of his car; and (3) the evidence that Howard passed a federal background check before successfully purchasing the firearm in Missouri should not have been excluded at the district court because that evidence shows Howard did not know he was a convicted felon and thus establishes a mistake of fact defense. This court granted review with respect to all issues.

ANALYSIS

The Court of Appeals considered each of Howard's issues. With regard to the first issue, the panel held that a completed Missouri SIS is a conviction for purposes of the Kansas statute. 51 Kan. App. 2d at 36. As to the third issue, the panel concluded that the district court did not err in excluding the evidence that Howard passed a federal background check before purchasing the firearm. 51 Kan. App. 2d at 49. We agree with both of these conclusions. Because we cannot improve upon the panel's thorough and well-reasoned analysis, we adopt it here.

6

Before moving to the remaining issue, we briefly consider one of Howard's arguments on the first issue that the panel did not address. Howard contends that considering a completed Missouri SIS to be a conviction results in an absurd interpretation of K.S.A. 2011 Supp. 21-6304 because the Kansas Legislature does not prescribe a method by which Kansas firearms dealers must uncover whether a person has a Missouri SIS before a sale.

While Howard's contentions may warrant this court's attention in a future case, they do not do so here. The question before this court does not pertain to the sale and purchase of firearms or concern the manner of the acquisition of weapons, but with the possession of firearms. For this reason, we conclude that Howard's argument is inapplicable to the case before us and is best left for another day.

Our adoption of the panel's analysis on issues one and three leaves us with only Howard's second issue to address. We do so now.

*The Search of Howard's Car*

Howard contends that the firearm found in his car was obtained through an illegal search in violation of his Fourth Amendment rights. Consequently, Howard argues that the district court erred in denying his motion to suppress the firearm as evidence.

*Standard of Review*

In reviewing the granting or denial of a motion to suppress evidence, this court determines whether the factual findings underlying the trial court's suppression decision are supported by substantial competent evidence. An appellate court does not reweigh the evidence or reassess the credibility of the witnesses. The ultimate legal conclusion drawn

7

from those factual findings is reviewed under a de novo standard. *State v. Carlton*, 297 Kan. 642, 645, 304 P.3d 323 (2013).

The facts in this case are not in dispute. Thus, the only issue here is a legal one and the review is therefore de novo.

*Discussion*

The Fourth Amendment to the United States Constitution, applicable to the States via the Fourteenth Amendment, establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches . . . ." Section 15 of the Kansas Constitution Bill of Rights provides identical protection. *State v. Morris,* 276 Kan. 11, 17, 72 P.3d 570 (2003). If conduct is prohibited by one, it is prohibited by the other. 276 Kan. at 17. Under both, a warrantless search is per se unreasonable, and the fruits of that search are inadmissible, unless the search falls within one of the established exceptions to the search warrant requirement. *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961); *State v. Richard*, 300 Kan. 715, 726, 333 P.3d 179 (2014). Those exceptions are "consent; search incident to a lawful arrest; stop and frisk; probable cause plus exigent circumstances; the emergency doctrine; inventory searches; plain view or feel; and administrative searches of closely regulated businesses." *Richard*, 300 Kan. 726-27.

In this case, Officer Loughman did not have a warrant when he searched Howard's car. Thus, the firearm that the search revealed would be excluded from evidence unless some recognized exception applies. The Court of Appeals concluded that the search was lawful based on the probable cause plus an exigent circumstance. *Howard*, 51 Kan. App. 2d at 37, 41.

On review, the State argues that either probable cause with exigent circumstances or inevitable discovery permitted a warrantless search.

*Probable cause with an exigent circumstance*

When probable cause and at least one exigent circumstance are present, an officer may perform a warrantless search of a car without violating the Fourth Amendment. *State v. Sanchez-Loredo*, 294 Kan. 50, 56, 272 P.3d 34 (2012). "'Exigent circumstances exist where the police officer reasonably believes there is a threat of imminent loss, destruction, removal, or concealment of evidence or contraband.'" 294 Kan. at 56. "For Fourth Amendment purposes, the mobility of a vehicle fulfills the requirement of exigent circumstances, so that a warrantless vehicle search is permitted based solely on probable cause." 294 Kan. at 51.

Here, the officer uncovered the firearm during the search of Howard's vehicle. Thus, the mobility of the car provided the exigent circumstance and the only issue before us is whether the officer had probable cause to search Howard's vehicle.

Probable cause to search a vehicle exists when the totality of the circumstances indicates there is a fair probability that the vehicle contains contraband or evidence of a crime. *State v. Jefferson*, 297 Kan. 1151, 1159, 310 P.3d 331 (2013). When analyzing the totality of the circumstances, we consider "'all of the information in the officer's possession, fair inferences therefrom, and any other relevant facts, even if they may not be admissible on the issue of guilt.'" *State v. Ramirez*, 278 Kan. 402, 406, 100 P.3d 94 (2004) (quoting *State v. Abbott*, 277 Kan. 161, Syl. ¶¶ 2-3, 83 P.3d 794 [2004]).

The State contends that three factors combined to create probable cause: (1) the officer's observation that the passenger of the car reclined her seat between the time that the officer first spotted Howard's car and when the officer approached the car window;

9

(2) the officer's observation of a clear plastic baggie with a ripped out corner in the console of the car; and (3) the officer's training and experience that led him to know people regularly package drugs utilizing twisted off corners of clear plastic baggies.

The Court of Appeals considered all of these factors, first concluding that the reclined seat "does not significantly add to the probable-cause analysis" because reclining in a seat is "a common, innocuous activity." *Howard*, 51 Kan. App. 2d at 38. However, the panel ultimately held that the officer's experience, coupled with the torn plastic baggie, was sufficient to establish probable cause. *Howard*, 51 Kan. App. 2d at 41.

We begin our probable cause analysis by considering the passenger's reclined seat and the panel's conclusion that it added nothing to increase the probability that the vehicle contained contraband. We disagree. When assessing whether probable cause existed, this court is to consider all information in the officer's possession and any "*fair inferences therefrom*." (Emphasis added.) *Ramirez*, 278 Kan. at 406. We conclude that it was fair for the officer in this case to infer from the passenger's action of reclining her seat that she was trying to hide something from his view. This inference adds to the likelihood that the car contained contraband, helping to establish probable cause.

Other courts have similarly held that reclined car seats can add to a probable cause analysis. See *United States v. Montgomery*, 527 F.3d 682, 686 (8th Cir. 2008) (probable cause to support search warrant supported in part because passenger reclined seat upon entering car in apparent effort to hide from anyone watching the car); *United States v. Johnson*, No. 14-CR-130, 2014 WL 5860478, at *4 (D. Minn. 2014) (unpublished opinion) (driver had reclined seat when officer approached car, leading officer to believe defendant was hiding incriminating evidence and helping to establish probable cause); *Stroud v. State*, 286 Ga. App. 124, 126-27, 648 S.E.2d 476 (2007) (probable cause to search vehicle supported in part by officer's observation that driver of parked car was leaned all the way back in seat and appeared to be attempting to hide); *State v. Eady*, No.

10

C.C.A. 263, 1989 WL 19674, at *2 (Tenn. Crim. App. 1989) (unpublished opinion) (probable cause to arrest furnished in part by fact that driver and passenger had seats reclined below the window in parked car, apparently attempting to avoid detection).

The dissent takes issue with the fact that the officer did not actually see the passenger recline her seat, writing that probable cause did not exist in this case because it could only be established through "stacked inferences." Slip op. at 18. We disagree with this rationale, however, because probable cause based on a furtive gesture is always built on inference—the inference that the defendant was nervous about or attempting to hide the fruits of recent or contemporaneous criminal activity. See *State v. Payne,* 273 Kan. 466, 474-75, 44 P.3d 419 (2002) (probable cause to arrest established in part because defendant glanced furtively around before entering a car known to be stolen, suggesting to officers that defendant knew he was acting unlawfully); *State v. Barnes*, 220 Kan. 25, 29, 551 P.2d 815 (1976) (probable cause to arrest established in part because defendant got up and fled restaurant while covering his face when officers entered the restaurant, leading the officers to suspect defendant was the robber for whom they were searching); *State v. Hays*, 221 Kan. 126, 129, 557 P.2d 1275 (1976) (probable cause to search trunk of car based in part on defendant's attempts to hide a brown paper sack in trunk, leading officers to believe bag contained contraband); *United States v. Springfield*, 196 F.3d 1180, 1183-84 (10th Cir. 1999) (probable cause to arrest based in part on defendant's furtive movements in the back of a van during officer's pursuit because movements led to reasonable inference that defendant was trying to hide contraband).

Further undermining the dissent's position is the fact that the officer began pursuing Howard's vehicle immediately after spotting it, thereby allowing for the reasonable inference that the passenger reclined her seat in response to the officer's pursuit. The dissent contends that there was a clear possibility that the passenger reclined her seat before she became aware of the officer, thus making any inference that she

11

reclined in order to hide something from the officer too far-fetched to help establish probable cause.

The officer here testified that he was parked in a gas station parking lot when he saw Howard turn into and immediately out of the lot to avoid an intersection. When Howard left the lot and crossed a street into a neighboring parking lot, the officer turned on his emergency lights and initiated a traffic stop. Howard responded to these lights and pulled over in the lot. This amounted to mere seconds between the officer's observation of the upright seat and Howard's realization that he was being pursued by an officer. Because the window of time in which the passenger could have decided to recline her seat without any awareness of the officer's pursuit was so small, we disagree with the dissent's contention that an inference the passenger reclined her seat in order to hide something from the officer was too weak an inference to support the finding of probable cause.

Here, Officer Loughman made the reasonable inference that the passenger's reclined seat was an attempt to conceal something from his view. This inference increased the likelihood that there was contraband in Howard's vehicle and was an appropriate consideration in establishing probable cause to search the car.

The next factor for our consideration is the officer's experience. Both the United States Supreme Court and this court have held that an officer's experience and expertise can be taken into account when determining whether the officer had probable cause to search or arrest. See *United States v. Ortiz*, 422 U.S. 891, 897, 95 S. Ct. 2585, 45 L. Ed. 2d 623 (1975) (officers can draw on knowledge and prior experience in determining whether probable cause exists to search a vehicle); *State v. Fitzgerald*, 286 Kan. 1124, 1130, 192 P.3d 171 (2008) ("[U]sing an officer's training and experience merely as one factor in a totality of the circumstances analysis of . . . probable cause does not infringe on the constitutional rights of a criminal defendant. We therefore consider [the officer's]

12

training and experience in this case, and, in theory, that factor weighs in favor of the existence of probable cause . . . ."). *abrogated in part on other grounds by State v. Sanchez-Loredo*, 294 Kan. 50, 272 P.3d 34 (2012).

Here, Officer Loughman testified that the plastic baggie with a ripped out corner stood out because his "training and experience with drugs and transportation of illegal drugs [led him to understand] that [it] is a common practice that people wrap marijuana in particular in cellophane baggies and twist the baggies several times to keep it secured." Under our own precedent and that of the United States Supreme Court, Officer Loughman's experience is a factor that helped to establish probable cause.

Finally, we consider the clear plastic baggie with the ripped out corner that Officer Loughman observed in the console of Howard's car. Howard argues that this baggie, standing alone, is not enough to establish probable cause to search a car. While that may be true, this is not the question before us today. As we have already noted, the baggie is not the only factor in this analysis. We also consider the passenger's reclined seat and Officer Loughman's training and experience. Thus, the question for our review is whether the clear plastic baggie with a ripped out corner *helped* to establish probable cause. We conclude that it did.

In *Ramirez*, we considered whether portions of plastic baggies or other packaging that is associated with drugs would establish probable cause. In that discussion, we explained that the caselaw supports a conclusion that, while the observation of packaging that is generally associated with drug storage may not be enough to establish probable cause, "'the small gap can . . . be filled [in] by furtive or evasive behavior.'" 278 Kan. at 408 (quoting 2 LaFave, Search and Seizure § 3.6[b], pp. 299-301 [1996], and 2004 Pocket Part, pp. 47-49).

13

In *Ramirez*, an officer observed the defendant while she was holding a torn plastic baggie. She was also at a bar known for drug activity, appeared to be under the influence of drugs, was fidgety and nervous, and avoided a uniformed officer. The officer who observed all of this knew that cocaine was regularly packaged in clear plastic baggies and that the defendant had used drugs in the past. Based on all of these factors, including the plastic baggie, we concluded that the officer had probable cause to arrest the defendant. 278 Kan. at 408-09.

More recently, in *State v. Jones*, we explained that an intact plastic bag will not "significantly add to [reasonable] suspicion," but that "suspicion might arise if the corner of the baggie had been cut off in a manner often used for packaging illegal substances or the bag had been tied in a knot." *State v. Jones*, 300 Kan. 630, 647-48, 333 P.3d 886 (2014).

As we did in *Ramirez*, we conclude that the presence of the torn, clear plastic baggie helped to establish probable cause.

Together, the three factors that were present here were enough to show a fair probability that the vehicle contained contraband or evidence of a crime. This supplied the officer with probable cause to search the car. Consequently, the district court did not err in its denial of Howard's motion to suppress the firearm found during the search.

Because we conclude that the search of Howard's car was legal under the exigent circumstances plus probable clause exception, we do not address the State's inevitable discovery argument.

Accordingly, the judgment of the Court of Appeals is affirmed.

14

* * *

ROSEN, J., concurring in part and dissenting in part:  I concur with the majority's conclusion to adopt the Court of Appeals analysis with respect to the first and third issues. However, I would not conclude that Officer Chad Loughman established probable cause to search Cameron Howard's car. Accordingly, I dissent from that part of the majority's decision that upholds the denial of Howard's motion to suppress.

The Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches . . . ." See *State v. Morris,* 276 Kan. 11, 17, 72 P.3d 570 (2003). This protection extends to a person's vehicle and prevents the warrantless search of that vehicle absent probable cause. See *United States v. Ross*, 456 U.S. 798, 825, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *State v. Sanchez-Loredo*, 294 Kan. 50, 56, 272 P.3d 34 (2012). Probable cause only exists when the totality of the circumstances establishes a fair probability that the vehicle contains contraband or evidence. *Sanchez-Loredo*, 294 Kan. at 55.

So long as these principles stand, I cannot agree that the presence of a reclined seat and a torn plastic baggie give an officer permission to invade the privacy and protection afforded by our Constitutions with a warrantless search of a vehicle.

First, I would agree with the Court of Appeals' conclusion that the reclined seat did not add to the probable cause analysis. See *State v. Howard*, 51 Kan. App. 2d 28, 38, 339 P.3d 809 (2014). The California Supreme Court has appropriately captured the danger in using such furtive gestures to support probable cause and the importance of keeping constitutional protections in mind when analyzing whether probable cause was present:

15

"The near-insufficiency of the evidence of probable cause upheld in certain . . . decisions suggests that police reliance on so-called 'furtive movements' has on occasion been little short of a subterfuge, and that in order to conduct a search on the basis of mere suspicion or intuition, guilty significance has been claimed for gestures or surrounding circumstances that were equally or more likely to be wholly innocent. . . . [T]he police officer should remember there is no substitute for patient and thorough investigation, and should avoid drawing a hasty or preconceived conclusion that the movements he observes are prompted by guilty motives . . . . [T]he appellate court, while giving due deference to the trier of fact's determination of the weight and credibility of testimony, . . . should keep firmly in mind the high purpose of the Fourth Amendment and remain ever vigilant to forestall any encroachment on its fundamental guarantees." *People v. Superior Court*, 3 Cal. 3d 807, 827-28, 91 Cal. Rptr. 729, 478 P.2d 449 (1970).

Ultimately, the California court held that there was no probable cause to search the defendants' vehicle when the defendant passenger, upon being pursued by police for the defendant driver's traffic infraction, made a furtive gesture toward the floor of their car and the defendant driver walked back to the officer's car instead of waiting for the officer to come to him. *People v. Superior Court*, 3 Cal. 3d at 828. The court explained that the defendant's "gesture alone is insufficient to constitute probable cause to search, and [the codefendant's] walk toward the police car cannot reasonably be deemed to invest her gesture with guilty significance." *People v. Superior Court*, 3 Cal. 3d at 828.

Like the California Supreme Court, I would conclude that, here, the passenger's innocuous reclined seat is not a factor to be considered to establish probable cause and the presence of a torn plastic baggie in the console of the car did nothing to change that.

Instead, the majority concludes that "it was fair for the officer in this case to infer from the passenger's action of reclining her seat that she was trying to hide something from [the officer's] view." Slip op. at 10. The majority supports this contention with a citation to cases from other courts that concluded a reclined seat helped support probable cause. However, only one of those cases considered a reclined *passenger's* seat, which is

16

certainly less suspect than a reclined *driver's* seat because the passenger has no driving duties. And, in each of those cases, the reclined seat was joined by other suspicious behaviors that strongly suggested the drivers or passengers were attempting to remain undetected or hide something from view. The facts here are entirely different.

In this case, Officer Loughman observed the passenger's seat in an upright position when Howard pulled into a parking lot. Once Howard left the lot, crossed the street, and entered a neighboring parking lot, the officer used his emergency lights to "initiate[] a traffic stop." When Howard pulled over and the officer approached the car, the passenger's seat was in a reclined position and the officer noticed a clear plastic baggie with a torn corner in the center console.

While it was obviously appropriate for the officer to infer that the passenger had reclined her seat, it is unreasonable to definitively infer from these facts that the passenger reclined the seat in response to the officer's pursuit. It is entirely possible that the passenger reclined before she was aware of the officer. The California Supreme Court has also noted the pitfalls with supporting probable cause with a suspicious movement when the officer does not know if the subject is aware of the officer's presence:

> "[Probable cause based on a furtive gesture] assumes that the movements in question were purposeful responses to the officer's appearance on the scene. But the person observed might not in fact have seen the police car, in which event any movements he made would be irrelevant. If he did see a vehicle following, he might not have recognized it to be a police car . . . . If he recognized it as such, he might not have understood that the police were attempting to bring his own car to a halt. If he correctly inferred the intent of the police, his movements might not have been made in response to that awareness; they might simply have been movements he was on the point of making in any event. And if his movements were responsive to the situation, they still might not have been purposeful: i.e., when suddenly facing an imminent confrontation with the police for some unknown misdeed, many citizens with nothing to hide will nevertheless manifest an

17

understandable nervousness by means of random, undirected gestures or movements."
*People v. Superior Court*, 3 Cal. 3d at 821-22.

While the reclined seat here *could* have been an attempt to hide something from an officer's view, it is just as likely that the passenger reclined the seat for the exact purpose that reclined seats exist—to make herself more comfortable. Adding to the improbability that the reclined seat could be reasonably viewed as an attempt to hide contraband, the officer here noticed that the passenger was visibly pregnant. In fact, the record reveals that the officer invited the passenger to sit on the ground after removing her from the car while he attended to Howard out of concern for the passenger's comfort and safety. Furthermore, the officer in this case testified that he searched the car for drugs based only on the plastic baggie—he did not cite the reclined seat as further indication that Howard had paraphernalia in his vehicle. These facts strongly indicate that a reasonable officer would just as likely see this passenger's reclined seat as a response to physical discomfort as opposed to an attempt to hide something. Such an action is not a furtive gesture upon which we should find probable cause.

To get to the majority's conclusion and find probable cause, we have to make the inference that the passenger reclined the seat after becoming aware that the officer was pursuing Howard's vehicle. From this inference, we have to further infer that the passenger reclined in order to hide contraband in which she had no possessory interest from the officer's view, and not simply to make herself more comfortable. I would conclude that these stacked inferences are weak and unreasonable and do not help to establish a fair probability that the vehicle contained contraband or evidence.

This leaves nothing to support the probable cause analysis apart from the officer's experience and the plastic baggie with the torn corner. The Court of Appeals considered these two factors enough to establish probable cause. *Howard*, 51 Kan. App. 2d at 41. I disagree. I would agree that an officer's experience is an appropriate consideration when

18

analyzing whether probable cause existed and that a plastic baggie with a torn corner, coupled with an officer's experience, *may* help to establish probable cause *when combined with other significant factors.* However, I would conclude that an officer's experience and a plastic baggie with a torn corner are not enough, on their own, to establish probable cause to search a vehicle.

We suggested as much in *Ramirez*, when we considered whether a torn plastic baggie, combined with other factors, would establish probable cause. There, we explained:

"Where one or two factors may cause a reasonable suspicion, a combination of several factors may create probable cause. This point is illustrated by drug cases considering whether the presence of portions of baggies, glassine packages, or similar suspicious packaging is sufficient to establish probable cause.

'[T]he observation of a person in possession of a certain kind of envelope or other packaging which on other occasions involving other persons has been found to conceal narcotics does not, standing alone, constitute probable cause. It has even been held that the viewing of a passing of such a container from one person to another is not enough, though it would seem that little more than that should be necessary. Certainly if money is passed in exchange there are then grounds to arrest, *and the small gap can also be filled by "furtive or evasive behavior,"* prior information from an informant, or the fact that the locale "has developed a reputation as a drug marketplace."' (Emphasis added.) 2 LaFave, Search and Seizure § 3.6(b), pp. 299-301, and 2004 Pocket Part, pp. 47-49 (1996)." *State v. Ramirez*, 278 Kan. 402, 407-08, 100 P.3d 94 (2004).

In *State v. Jones*, 300 Kan. 630, 333 P.3d 886 (2014), we considered whether an intact plastic baggie, combined with erratic driving and the driver's cotton mouth and slurred speech, was enough to establish a reasonable suspicion of criminal activity, thus permitting an officer to extend a traffic stop. We held that these factors were not enough to create reasonable suspicion. 300 Kan. at 648. We noted that "[c]ommon sense suggests

19

that if the bag had been used to package illegal substances, [the driver] or her companions would have hidden the bag along with its contents. There is no evidence of an attempt to do so . . . [and] there are a multitude of innocent uses for clear plastic bags . . . ." 300 Kan. at 647-48. We also summarized the *Ramirez* holding as providing that probable cause is "not met simply because [a] person possesses [a] type of packaging that on other occasions had been used to conceal narcotics." 300 Kan. at 648.

Because other factors helped to establish probable cause in *Ramirez*, and the facts were slightly different in *Jones*, we did not definitively decide whether a torn plastic baggie and an officer's experience alone established probable cause in either case. However, other courts have addressed this question, concluding that the two factors, on their own, are not enough. See *Com. v. Garcia*, 34 Mass. App. 645, 651, 614 N.E.2d 1031 (1993) (trooper's experience and empty baggie not enough to provide probable cause to conduct a warrantless search of the automobile); *Com. v. Houston*, 456 Pa. Super. 105, 111, 689 A.2d 935 (1997) (officer's observation of "six plastic baggies with their corners cut off in a manner consistent with drug packaging" not enough to establish probable cause).

Neither the State, nor the majority, nor the Court of Appeals produced a single instance in which a court concluded that probable cause existed based solely on a torn plastic baggie and an officer's experience. To provide that decision today would appear to stray from our decisions in *Ramirez* and *Jones*. Nor did anyone produce a case in which something as innocuous and innocent as a torn plastic baggie could transform a similarly innocent activity—reclining a seat—into something suspicious enough to establish probable cause. And, perhaps most importantly, either decision would all but destroy any protection still provided by the Fourth Amendment's assurance that we are free from an unreasonable search of our vehicles. For these reasons, I would conclude that there was not probable cause to search Howard's car.

Because I would conclude that there was not probable cause to search Howard's vehicle, I would conclude that the district court erred in denying Howard's motion to suppress the firearm that was found in the illegal search. Because the possession of the firearm was an essential element of the crime charged, I would reverse the Court of Appeals and remand to the district court with orders to reverse Howard's conviction.

JOHNSON, J., joins in the foregoing concurring and dissenting opinion.