UNITED STATES of America, Appellee,

v.

Lavonne ALBERTS, Appellant.

No. 83–1328.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 11, 1983.

Decided Nov. 22, 1983.

Rehearing Denied Jan. 27, 1984.

Rodney S. Webb, U.S. Atty., Dennis D. Fisher, Asst. U.S. Atty., Fargo, N.D., for appellee.

Michael F. Daley, McConn, Fisher & Thune, Ltd., Grand Forks, N.D., for appellant, Lavonne Alberts.

Before ROSS, McMILLIAN and BOWMAN, Circuit Judges.

BOWMAN, Circuit Judge.

Lavonne Alberts appeals from a conviction of embezzling funds from the Devils Lake Sioux Comprehensive Employment Training Act (CETA) office in violation of 18 U.S.C. § 1163. We reverse the conviction.

On September 10, 1982, Special Agent Spencer A. Hellekson, Federal Bureau of Investigation, was notified by Criminal Investigator Robert D. Ecoffey, Bureau of Indian Affairs, that a number of Devils Lake Sioux Tribe CETA Program checks had been stolen and cashed. Three of the cashed checks named Lavonne Alberts as payee.

On September 28, 1982, in the course of investigating this matter, Agent Hellekson

obtained a warrant to search Lavonne Alberts' personal belongings, which were believed to be contained in a number of plastic garbage bags. The warrant listed "certain large green garbage bages (sic) . . ." in its caption. The body of the warrant and the affidavit supporting the warrant stated that the garbage bags were believed to be located at the residence of Linda Alberts Thompson (Lavonne Alberts' aunt). Later that day, Agent Hellekson went to the Thompson residence to execute the warrant. Mrs. Thompson told Hellekson that she was not storing any of Alberts' property but suggested that he might look at the residence of Laverne Goodbird (Lavonne Alberts' half sister). The Thompson residence was not searched. Hellekson proceeded to the Goodbird residence but was unable to find anyone at home.

On October 2, 1982, Investigator Ecoffey, accompanied by a policeman, Richard L. Wilkie, Bureau of Indian Affairs, returned to the Goodbird residence. When Mrs. Goodbird answered the door, Ecoffey told her that they had a search warrant for Lavonne Alberts' property. Goodbird then told the officers that the bags were not in the house because she had moved them out back. Goodbird directed the officers around the outside of the house, to a point near the rear entrance, where the garbage bags containing Alberts' property were located.

Ecoffey and Wilkie searched some of the bags. In one bag they found Devils Lake Sioux Tribe CETA check number 1600, check stubs numbered 1376, 1377 and 1378 and an employee's statement of earnings deduction stub. These items were seized.

On November 18, 1982, the grand jury returned an indictment charging Alberts with three counts of embezzlement in violation of 18 U.S.C. § 1163. In a pretrial motion, Alberts sought to suppress the evidence seized during the search at the Goodbird residence, claiming that the search and seizure violated her rights under the Fourth Amendment to the Constitution of the United States and the Indian Civil Rights Act of 1968, 25 U.S.C. § 1302(2).[1] The motion was denied. At trial, the items seized at the Goodbird residence were admitted into evidence as Government Exhibit 1. In addition, three photographs of Alberts' fingerprints on Devils Lake Sioux Tribe CETA check number 1600 were admitted into evidence as Government Exhibits 1A, 1B and 1C. Alberts was convicted of embezzlement. On Count 1, she was sentenced to 18 months imprisonment, with all but 60 days suspended, and two years probation. She was also sentenced to two years concurrent probation on Counts 2 and 3.

Alberts contends that the search of the garbage bags located at the Goodbird residence violated her rights because (1) the search warrant described as the place to be searched a place (the Linda Alberts Thompson residence) other than the place that actually was searched (the Laverne Goodbird residence) and (2) Laverne Goodbird did not voluntarily consent to the search.[2] Therefore, Alberts argues that the district judge improperly denied her pretrial motion to suppress evidence and that the district judge erred in admitting illegally seized evidence (Government Exhibit 1) and evidence derived therefrom (Government Exhibits 1A, 1B and 1C) at trial.

▮ The Constitution requires that government searches of private property be made only after securing a warrant. Limited exceptions to this warrant requirement include voluntary consent to the search, *see e.g., Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), and the presence of exigent circumstances which make it impracticable to obtain a warrant, *see, e.g., Arkansas v. Sanders,* 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979); *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). While exigent circumstances are not a con-

1. While the Bill of Rights does not technically apply to Indians on Indian land, the Indian Civil Rights Act purports to give Indians these constitutional rights. We can, therefore, consider this case under fourth amendment standards.

*See United States v. Lester,* 647 F.2d 869, 872 (8th Cir.1981).

2. Alberts' ability to challenge the consent is discussed *infra.*

sideration in this case, we are called upon both to evaluate the validity of a search warrant and to determine if consent to a search was voluntarily given.

In denying Alberts' pretrial motion to suppress evidence, the trial judge determined (1) that the search of Alberts' property was made under a valid warrant which named the garbage bags as the "place" to be searched and (2) that the search was made with Laverne Goodbird's voluntary consent. We disagree with both determinations.

## I. Place to be Searched.

■ A search warrant must contain a description of the place to be searched. The place must be described with sufficient particularity as to enable the executing officer to locate and identify it with reasonable effort. Such specificity is required in order to avoid any reasonable probability that another place might mistakenly be searched. *See United States v. Gill*, 623 F.2d 540, 543 (8th Cir.), *cert. denied*, 449 U.S. 873, 101 S.Ct. 214, 66 L.Ed.2d 94 (1980).

■ In holding that the place to be searched was the garbage bags containing Alberts' property, the district court relied on our decision in *Wangrow v. United States*, 399 F.2d 106 (8th Cir.), *cert. denied*, 393 U.S. 933, 89 S.Ct. 292, 21 L.Ed.2d 270 (1968). The decision is, however, distinguishable on its facts. In *Wangrow*, certain automobiles were deemed to be the place to be searched. The automobiles were already in police custody pursuant to a lawful arrest when application for a warrant to search them was made. Additionally, the officer's affidavit supporting the warrant gave a detailed description of the impounded vehicles and their correct location. In this case, the garbage bags were not lawfully in police custody prior to the issuance of

the warrant. The warrant was, instead, issued to enable the officers to find the garbage bags. The only distinguishing characteristic given was color. Furthermore, the affidavit supporting this warrant did not give the correct location of the garbage bags. Thus, *Wangrow* does not support the court's conclusion that the garbage bags were the place to be searched.

■ In the instant case, the warrant and its supporting affidavit both indicate that garbage bags were to be searched for at the Linda Alberts Thompson residence. Nothing in the warrant or the affidavit could have enabled the executing officer to locate the garbage bags at the Laverne Goodbird residence.[3] If it could be said that the garbage bags constituted the place to be searched, the officers would have been justified in searching anywhere that the bags conceivably might have been located. To adopt this position would, in essence, condone the use of a general warrant. "The authority to search granted by any warrant is limited to the specific places described in it and does not extend to additional or different places." *United States v. Heldt*, 668 F.2d 1238, 1262 (D.C.Cir.1981), *cert. denied*, 456 U.S. 926, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982). The only place authorized to be searched under this warrant was the Linda Alberts Thompson residence.

## II. Voluntary Consent.

■ In order for Alberts to raise the voluntary consent issue she must have maintained a legitimate expectation of privacy in the property that was searched. *See, e.g., United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). We believe Alberts maintained such an expectation in that (1) she owned the property that was searched; (2) she had not relinquished her right to

---

**3.** The information which led the officers to the Goodbird residence came from Linda Alberts Thompson. This "tip" should have been tested before a neutral magistrate as a basis for probable cause to search the Goodbird residence. A law enforcement officer is only justified in making his own probable cause determinations when there are exigent circumstances. *See Steagald v. United States*, 451 U.S. 204, 211–

13, 214 n. 7, 101 S.Ct. 1642, 1647–1648, 1649 n. 7, 68 L.Ed.2d 38 (1981). Thompson told the officers on September 28, 1982 that they might find the garbage bags at the Goodbird residence. It was not until October 2, 1982 that the search was made. Given this time frame, it cannot be seriously argued that exigent circumstances kept the officers from presenting this additional information to a magistrate.

possess the property; (3) she had stored her belongings in closed, opaque containers; and (4) she had stored the property at the Goodbird residence with Laverne Goodbird's knowledge and permission.

For a search to be justified under the consent exception to the warrant requirement, the consent must be voluntarily and freely given. *See United States v. Matthews,* 603 F.2d 48, 51 (8th Cir.1979), *cert. denied,* 444 U.S. 1019, 100 S.Ct. 674, 62 L.Ed.2d 650 (1980). Voluntariness of the consent is a question of fact to be determined from the totality of the circumstances. *See Schneckloth, supra,* 412 U.S. at 227, 93 S.Ct. at 2047. In the context of a suppression motion, factual findings of the trial court, such as voluntariness of consent, will be set aside only where clearly erroneous. *See, e.g., United States v. Bentley,* 706 F.2d 1498, 1509 (8th Cir.1983).

The district court found that Laverne Goodbird voluntarily consented to the search on her premises of the garbage bags containing Alberts' property. After a careful review of the case, we conclude that the court's finding of voluntary consent was not supported by substantial evidence and was, thus, clearly erroneous.

On direct examination, Officer Wilkie testified that Goodbird gave the officers permission to be on her property. Wilkie also testified on both direct and cross-examination that the first thing Investigator Ecoffey did after Goodbird answered the door was advise her that they had a search warrant for Lavonne Alberts' property. It was only after Investigator Ecoffey told Goodbird that they had a search warrant that she directed them to the garbage bags. This evidence negates a finding of voluntariness. "When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. Where there is coercion there cannot be consent." *Bumper v. North Carolina,* 391 U.S. 543, 550, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1967). "*Bumper* may be read to hold that a search can never be justified on the basis of consent when consent has been given after an official has asserted that he or she possesses a warrant...." *United States v. Allison,* 619 F.2d 1254, 1264 n. 5 (8th Cir.1980).

We conclude that the search of Lavonne Alberts' property at the Laverne Goodbird residence was improper. There was neither a valid warrant nor voluntary consent. Therefore, Alberts' motion to suppress should have been granted.

Since we find that the evidence (Devils Lake Sioux Tribe CETA check number 1600, check stubs numbered 1376, 1377 and 1378 and an employee's statement of earnings and deductions stub) should have been suppressed, it is not necessary to elaborate on the impropriety of admitting these items at trial. It also follows that Government Exhibits 1A, 1B and 1C (photographs of Devils Lake Sioux Tribe CETA check number 1600 showing fingerprints of Lavonne Alberts) should not have been admitted since they were derived from evidence that should have been suppressed.

Accordingly, we reverse the conviction and remand the case to the district court for further proceedings consistent with this opinion.