

# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI, )
)
Appellant, )
)
v. ) No. SC98376
)
JAMES CHRISTOPHER BALES, )
)
Respondent. )

*Opinion issued August 31, 2021*

### APPEAL FROM THE CIRCUIT COURT OF PULASKI COUNTY
The Honorable John Beger, Judge

The state appeals the circuit court's order sustaining James Bales's motion to suppress evidence – a cell phone and electronic data stored on that cell phone – purportedly obtained pursuant to the execution of a search warrant. The circuit court found the search warrant failed to describe with sufficient particularity the thing to be seized and was so facially deficient the executing officers could not reasonably have presumed it to be valid. On appeal, the state claims the circuit court erred in suppressing the evidence seized pursuant to the warrant because the search warrant was valid and, even if it was not, the good faith exception to the exclusionary rule should apply. Because the search warrant commanded officers to search a black Samsung cell phone in a black case located at a particular address, the seizure of a cell phone at the sheriff's office was outside the scope

of the warrant, so the evidence was not validly seized. Additionally, the circuit court did not err in finding that the officer conducting the search did not have a good faith basis when he executed the search warrant at the sheriff's office contrary to the clear directions of the search warrant. Accordingly, the circuit court did not err in sustaining Mr. Bales's motion to suppress, and its order is affirmed.

## Factual and Procedural Background

On March 17, 2019, Detective Thomas Fenton of the Pulaski County Sheriff's Department, a social worker, and another law enforcement officer went to Mr. Bales's home to investigate potential abuse or neglect of his 22-month-old son, L.B., who had been admitted to the hospital for a head injury and diagnosed with shaken baby syndrome. When questioned, Mr. Bales claimed L.B. hit his head on the foot of a bed while playing. He said, although L.B. seemed fine after hitting his head, Mr. Bales was awakened in the middle of the night by L.B. banging his head against the wall in the hallway of the home. After Mr. Bales picked L.B. up, he said he immediately put L.B. back down because L.B. threw his body backwards and was "throwing a fit." Mr. Bales said he then grabbed his cell phone to record L.B.'s behavior.

To support his explanation of L.B.'s injury, Mr. Bales showed Detective Fenton and the social worker the video he recorded the night L.B. was injured. It showed L.B. sitting on the floor, rocking back and forth and crying, until he "face-planted," hitting his head on the wooden floor. After that, L.B. went limp and was breathing heavily. When Detective Fenton interviewed Mr. Bales a couple of days later at the sheriff's office, Mr. Bales again showed him the video on his cell phone.

Because Detective Fenton believed the video incriminated Mr. Bales, he sought a search warrant through the prosecuting attorney. In an affidavit he executed to support the prosecuting attorney's application for a search warrant, Detective Fenton stated:

> I Detective Thomas Fenton, through my training and experience dealing with Child Abuse and Neglect cases, know that an alleged perpetrator, will video record the child after an incident, (stating I found the child this way), or have recorded past incidents of abuse. Send text messages to family and friends, asking questions about the alleged types of abuse. Google different types of Child Abuses [sic] cases, symptoms, and signs of Abuse.

Detective Fenton further stated he believed a phone, described as a "**Samsung Galaxy Black in color** and belonging to James Christopher Bales[,] [c]urrently at 13251 Highway O Dixon Missouri 65459," contained data "consisting of but not limited to Phone messages, text messages, social media networks, Instagram photos, Facebook messages, passwords to the device, global positioning system coordinates, emails, phone logs, SIM cards, photo galleries, voicemails, or any other evidence pertaining to the crime." (Bolded in original).

An assistant prosecuting attorney filed an application for a search warrant. The application described electronic data and a SIM card as evidence of the crimes of endangering the welfare of a child and abuse or neglect of a child and alleged the evidence was kept in a cell phone located at 13251 Highway O, Dixon, in Pulaski County, Missouri. The description of the cell phone in the warrant application differed from the description in Detective Fenton's affidavit in that the application included the additional detail of the phone number associated with the cell phone but omitted the model. The circuit court issued a search warrant on March 28, 2019 (the "March search warrant"). It did not

incorporate the application or affidavit, include the cell phone model or number, or identify Mr. Bales as the owner of the cell phone.

Before the March search warrant was executed, Mr. Bales returned to the sheriff's office for an interview, accompanied by his attorney. He once again attempted to show Detective Fenton the video on his cell phone. While Mr. Bales was searching his cell phone for the video, Detective Fenton informed Mr. Bales and his attorney that he had a search warrant for the cell phone and seized it.

Detective Fenton filed a return of the search warrant that incorrectly stated he had gone to the premises described in the warrant and seized the cell phone after discovering it there. When a police investigator searched the electronic data stored on the cell phone, he found possible evidence of other crimes and applied for a second search warrant. The investigator's affidavit filed to support issuance of a second search warrant stated the cell phone was obtained when Detective Fenton executed the March search warrant. The circuit court issued a second search warrant on May 28, 2019.[1]

Mr. Bales filed a motion to quash the March search warrant, seeking return of the phone and any electronic data obtained from it. In his motion, Mr. Bales alleged the March search warrant was fatally defective because it lacked particularity in its description of the cell phone and did not authorize retention of the phone. At the hearing on his motion to quash, Mr. Bales reasserted his particularity challenge.

---

[1] This search warrant issued to authorize a search of the cell phone for evidence of the crime of invasion of privacy because the police investigator found photographic evidence pertaining to that crime when searching the cell phone seized pursuant to the March search warrant.

4

At a hearing on Mr. Bales's motion, the circuit court determined the motion to quash was essentially a motion to suppress and directed the state to proceed with that understanding. When the state called Detective Fenton as a witness, he testified he obtained the March search warrant, believed it was correctly issued, and seized the phone pursuant to the warrant. During cross-examination, Detective Fenton admitted he seized the phone from Mr. Bales at the sheriff's office and not from the location and premises identified in the warrant, which was contrary to his statement in the return and inventory. During argument, the state conceded the March search warrant was not as particular as it could have been but argued there was no doubt the correct phone was seized. Mr. Bales asserted the search warrant failed to describe the phone in a way that differentiated it from any other black Samsung in a black case.

The circuit court found the March search warrant authorized seizure of a cell phone but failed to describe the phone with sufficient particularity because black Samsung cell phones in black cases are ubiquitous. The court also found, while the cell phone was seized "allegedly pursuant to the . . . search warrant," its contents were examined before a warrant to search the phone was issued. The court held the March search warrant "failed to adequately describe the thing to be seized and was so facially deficient the executing officers could not reasonably presume it to be valid." It found the search of the cell phone for electronic data occurred prior to issuance of a search warrant authorizing such search, so the court suppressed all evidence obtained during the search of the cell phone as "fruit of the poisonous tree."

The state appealed pursuant to section 547.200.1(3).[2] After an opinion by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

**Standard of Review**

When reviewing a circuit court's order on a motion to suppress evidence, "[t]his Court gives deference to the [circuit] court's factual findings but reviews questions of law *de novo*." *State v. Gaw*, 285 S.W.3d 318, 320 (Mo. banc 2009). The state bears the risk of non-persuasion and the burden to prove by a preponderance of the evidence that the seizure of evidence was constitutionally proper. Section 542.296.6; *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). All facts and inferences will be viewed in the light most favorable to the circuit court's ruling, and contrary evidence and inferences will be disregarded. *State v. Douglass*, 544 S.W.3d 182, 189 (Mo. banc 2018).

**Analysis**

The question before the Court is whether the circuit court erred in sustaining Mr. Bales's motion to suppress evidence seized pursuant to the March search warrant. On appeal, the state asserts the circuit court erred when it suppressed the evidence obtained from Mr. Bales's phone because the March search warrant was facially valid and described the cell phone with sufficient particularity. The state claims the circuit court further erred in holding the March search warrant was so facially deficient it was unreasonable for the executing officers to believe it was valid, and the evidence Detective Fenton seized was

---

[2] All statutory references are to RSMo 2016.

admissible under the good faith exception to the exclusionary rule because it was reasonable for him to believe the March search warrant was valid.

In support of the circuit court's order, Mr. Bales claims the March search warrant did not describe the "thing to be seized" with sufficient particularity and the good faith exception does not apply because it was so facially deficient an executing officer could not reasonably presume it was valid. Additionally, Mr. Bales contends this Court should affirm the order because Detective Fenton exceeded the scope of the warrant when he seized the phone from Mr. Bales's person at the sheriff's office rather than executing the warrant at the location the warrant commanded officers to search. The circuit court's order will be affirmed on appeal if it reached the right result even if for the wrong reason. *Id.* Because the execution of the search warrant outside its scope and the inapplicability of the good-faith exception are dispositive, whether the warrant described the cell phone with sufficient particularity will not be addressed.

Search warrants are required to protect citizens from unfounded invasions to their privacy and intrusions on their property. *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971). To be valid, a search warrant must be supported by probable cause and approved by a neutral magistrate. *Id.* Additionally, the Fourth Amendment specifies "two matters that must be 'particularly described' in the warrant: 'the place to be searched' and 'the persons or things to be seized.'" *United States v. Grubbs*, 547 U.S. 90, 97 (2006) (alteration omitted) (quoting U.S. CONST. amend. IV). Missouri statutes duplicate this constitutional requirement and provide search warrants must describe with particularity "the property, article, material, substance or person which is to be searched for and seized"

and "the person, place or thing which is to be searched." Sections 542.276.6(4)-(5). Finally, a search warrant must "[c]ommand that the described person, place, or thing be searched and that any of the described property, article, material, substance, or person found thereon or therein be seized." Section 542.276.6(6).

The March search warrant includes four paragraphs in total. As it relates to the place to be searched and the things to be seized, the search warrant states:

> Phone messages, text messages, social media networks, Instagram photos, Facebook messages, passwords to the device, global positioning system coordinates, emails, phone logs, SIM cards, photo galleries, voicemails, or any other evidence pertaining to the crime *kept in the following described places* in the County aforesaid, to wit:
>
> A cell phone located at, 13251 Highway O Dixon, in Pulaski County Missouri. This cell phone is described as Black Samsung with black case.
>
> NOW THEREFORE, these are to command you that you *search the said premises above described to including* [sic] *text messages, passwords, global positioning system, emails, phone records, or all other digital folders* and, *if* said *above described articles* or any part thereof *be found on said premises* by you, that you *seize the same and take same into your possession*[.]

(Emphasis added). These paragraphs are examined in a commonsense, rather than hypertechnical, manner, *State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007), to determine the warrant's scope. And, as noted previously, all facts and inferences will be viewed in the light most favorable to the circuit court's ruling. *Douglass*, 544 S.W.3d at 189.

The first paragraph begins with a list of electronic data.[3]  The list has no stated purpose, but its relevance can be inferred from the last item in the list:  "any other evidence pertaining to the crime kept in the following described places."  The electronic data is the evidence "to be searched for and seized."[4]  The two sentences following the warrant's description of the electronic data identify the place to be searched.  The warrant describes the evidence as being kept in "the following described places, in the County aforesaid, to wit: A cell phone located at 13251 Highway O Dixon, in Pulaski County Missouri.  This cell phone is described as a black Samsung with black case."

Further, the first sentence in the last paragraph commands officers to search:

[T]he said premises above described to including [sic] text messages, passwords, global positioning system, emails, phone records or all other digital folders , in question . . . and, if said above described articles or any part thereof be found on said premises by you, that you seize the same and take same into your possession.

The word "premises" refers to the place to be searched.   By definition, "premises" refers to real property, a building, or buildings.[5]  Because a cell phone does not fall within this

---

[3] The items listed are electronic data, except for the SIM cards, which are items of tangible personal property.  The electronic data and SIM cards will be referenced, collectively, as "electronic data."

[4] The circuit court found the search of the contents of Mr. Bales's cell phone occurred prior to a warrant to search the phone being issued.  Contrary to that finding, the March search warrant authorized law enforcement to search for and seize electronic data stored on the cell phone.

[5] The relevant definition of "premises" is "a specified piece or tract of land with the structures on it." *Premises*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY UNABRIDGED 1789 (3d ed. 2002).  The dissenting opinion relies on Black's Law Dictionary to define "premises" to mean "[m]atters (usu. preliminary facts or statements) previously referred to in the same instrument."  Generally, the Court consults a standard English language dictionary when determining the ordinary meaning of a word. *Smith v. Humane*

definition, "premises" references 13251 Highway O, Dixon. The list that follows "premises above described" partially replicates the previous list of electronic data to be searched for, and the remainder of the sentence expressly authorizes seizure of any of the described electronic data found on the premises. Altogether, the March search warrant commanded officers to search a black Samsung cell phone in a black case located at 13251 Highway O, Dixon, and to search it for and seize the described electronic data. [6]

Mr. Bales asserts the seizure of the cell phone was legally invalid because Detective Fenton seized the cell phone outside the scope of the search warrant. Section 542.276.7 requires search warrants to be executed "by conducting the search and seizure commanded." When executing a warrant, law enforcement officers are required to adhere to the terms listed in the warrant and may not exceed its authorized scope by searching a

---

*Soc'y of U.S.*, 519 S.W.3d 789, 800 (Mo. banc 2017). Of course, words "having a peculiar and appropriate meaning in law shall be understood according to their technical import," section 1.090, and a word's "appropriate meaning in law" may be derived from Black's Law Dictionary, *see Mantia v. Mo. Dep't of Transp*, 529 S.W.3d 804, 809 (Mo. banc 2017). The context in which the warrant uses "premises," however, shows the warrant uses the term's ordinary meaning. If the dissenting opinion's definition were adopted, the warrant would command officers to "search the [matters (usu. preliminary facts or statements) previously referred to in the same instrument] above described to including [sic] text messages, passwords, global positioning system, emails, phone records, or all other digital folders." By contrast, giving "premises" its ordinary meaning, the March search warrant commands officers to search land with the buildings thereon – 13251 Highway O, Dixon.
[6] The dissenting opinion would hold the reference to 13251 Highway O, Dixon, merely further identifies the cell phone and is ultimately irrelevant to the warrant's validity, particularity, or scope. In this way, the dissenting opinion's interpretation of the March search warrant renders the address superfluous. The inclusion of the address, however, shows the circuit court meant the address to be given effect and, in context, 13251 Highway O, Dixon, is the location to which the officers were commanded to go and search a black Samsung cell phone in a black case.

location other than the one identified in the search warrant. *Douglass*, 544 S.W.3d at 192. "The authority to search granted by any warrant is limited to the specific places described in it and does not extend to additional or different places." *United States v. Johnson,* 640 F.3d 843, 845 (8th Cir. 2011) (quoting *United States v. Pennington,* 287 F.3d 739, 744 (8th Cir. 2002)); *accord United States v. Nichols,* 344 F.3d 793, 797 (8th Cir. 2003).

Here, the circuit court found, and the state concedes, Detective Fenton seized a cell phone from Mr. Bales at the sheriff's office rather than a cell phone located at 13251 Highway O, Dixon. It is understandable that Detective Fenton believed he could validly seize the cell phone when Mr. Bales was holding it in plain view and Detective Fenton had probable cause to believe it contained evidence of a crime.[7] Whether the cell phone is otherwise lawfully admissible is not before this Court, however.[8] The issue before the circuit court, and on appeal, is whether the March search warrant was a legally valid basis for the seizure of the cell phone at the sheriff's office and the search and seizure of the electronic data stored thereon.

The scope of a search conducted pursuant to a warrant "is limited by the terms of its authorization." *Walter v. United States*, 447 U.S. 649, 656 (1980). "If the scope of the

---

[7] *See Arizona v. Hicks*, 480 U. S. 321, 326 (1987) (holding officers may seize evidence in plain view if there is probable cause to believe it is evidence of a crime or is contraband); *State v. Johnston*, 957 S.W.2d 734, 742 (Mo. banc 1997) ("[A]n officer who is lawfully located in a place from which the object can plainly be seen may seize the object so long as there is probable cause to believe that the object is connected to the crime.").

[8] The state did not assert in the circuit court that an exception to the warrant requirement applies, and this Court "will not, on review, convict a lower court of error on an issue which was not put before it to decide." *Johnson v. State*, 580 S.W.3d 895, 899 n.3 (Mo. banc 2019).

search exceeds that permitted by the terms of a validly issued warrant or the character of the relevant exception from the warrant requirement, the subsequent seizure is unconstitutional without more." *Horton v. California*, 496 U.S. 128, 140 (1990). The March search warrant authorized the search of a black Samsung cell phone in a black case located at 13251 Highway O, Dixon, and authorized officers to search it for electronic data. Executing the March search warrant at the sheriff's office, or any location other than 13251 Highway O, Dixon, was beyond the scope of the search authorized by the warrant. As a result, it is unnecessary to decide whether the March search warrant described with particularity the thing to be seized and the place to be searched. The phone's seizure at the sheriff's office was outside the scope of the search warrant; therefore, the March search warrant, even assuming it was sufficiently particular, is not a valid legal basis for such seizure. Accordingly, the evidence must be suppressed unless an exception to the warrant requirement applies. *Coolidge*, 403 U.S. at 481.

Raising the issue for the first time in its reply brief in this Court, the State claims it was not outside the scope of the search warrant for Detective Fenton to seize the cell phone at the sheriff's office because a cell phone is inherently moveable. However, "[i]ssues raised for the first time on appeal are not preserved for appellate review." *Heifetz v. Apex Clayton, Inc.*, 554 S.W.3d 389, 397 n.10 (Mo. banc 2018). Even if reviewed gratuitously, the claim is without merit. In support of its claim, the state cites section 542.286, which it argues permits seizure of a moveable object anywhere it may be found. Section 542.286 provides:

12

1. A warrant to search a person or any movable thing may be executed in any part of the state where the person or thing is found *if*, subsequent to the filing of the application, *the person or thing moves or is taken out of the territorial jurisdiction of the judge issuing the warrant.*

2. All other search warrants shall be executed within the territorial jurisdiction of the court out of which the warrant issued and within the territorial jurisdiction of the officer executing the warrant.

(Emphasis added.)  Contrary to the state's argument that the statute authorizes seizure of a movable object anywhere it may be found, section 542.286 addresses only the territorial jurisdiction in which a search warrant may be executed.  If a warrant is for the search of a movable thing, the movable thing's subsequent departure from the territorial jurisdiction of the judge who issued the warrant does not prevent the warrant's execution.  Section 542.286.1.  It has no application to the seizure of Mr. Bales's cell phone, which was seized within the territorial jurisdiction of the court that issued the search warrant.[9]

---

[9] The dissenting opinion asserts the mobility of a cell phone makes a holding that a cell phone can be seized and searched only at a location stated in a search warrant contrary to common sense and "exalts form over substance."  It argues that the March search warrant, describing the location of the electronic data to be seized as "[a] cell phone located at, 13251 Highway O Dixon, in Pulaski County, Missouri," authorized Detective Fenton to lawfully seize and search the cell phone wherever it was found.  To support these conclusions, the dissenting opinion cites no case involving a search warrant for seizure or search of a cell phone or other mobile object.  It discusses *United States v. Alberts*, 721 F.2d 636 (8th Cir. 1983), and concludes that it supports a holding the warrant authorizes a search of a black Samsung cell phone in a black case wherever it may be found.  *Alberts* is not authority for that proposition. It holds that a warrant authorizing the search of an item at one residence does not authorize a search of the same item at a different residence.  *Id.* at 639.  In *Alberts*, an FBI agent obtained a warrant "to search Lavonne Alberts' personal belongings, which were believed to be contained in a number of plastic garbage bags." *Id.* at 638.  The body of the warrant "stated that the garbage bags were believed to be located at the residence of Linda Alberts Thompson." *Id.*  After the warrant was issued, officers discovered the bags had been moved to a different residence and executed the warrant there.  *Id.*  The Eighth Circuit rejected the argument that the garbage bags were the "place

13

Because Detective Fenton seized Mr. Bales's cell phone outside the scope of the March search warrant, the warrant was not a valid basis for the seizure. On the issues before it, the circuit court did not err in finding the cell phone and any evidence obtained as a result of the unreasonable seizure must be suppressed unless an exception to the exclusionary rule applies. The only exception the state raised in the circuit court was the good faith exception to the exclusionary rule.[10] The state argued the good faith exception should apply because Detective Fenton did everything that reasonably could have been done under the circumstances in obtaining the warrant.[11]

The exclusionary rule precludes admission in court of evidence obtained in violation of the constitution. *Douglass*, 544 S.W.3d at 198. The purpose of the exclusionary rule is to deter unlawful police conduct such as searches conducted pursuant to an inadequate warrant and warrantless searches outside of a valid warrant exception. *United States v. Leon*, 468 U.S. 897, 919 (1984). Several exceptions to the exclusionary rule, including the

to be searched" because: "If it could be said that the garbage bags constituted the place to be searched, the officers would have been justified in searching anywhere that the bags conceivably might have been located. To adopt this position would, in essence, condone the use of a general warrant." *Id.* at 639. Applied here, "If it could be said that the [cell phone] constituted the place to be searched, the officers would have been justified in searching anywhere that the [phone] conceivably might have been located. To adopt this position would, in essence, condone the use of a general warrant." *Id.*

[10] The state has not raised other exceptions to the exclusionary rule, e.g., the inevitable discovery or independent source doctrine. *See State v. Grayson*, 336 S.W.3d 138, 150 (Mo. banc 2011).

[11] The state also argues the exclusionary rule should not apply because it was less intrusive to conduct a search at the sheriff's office than to conduct a search at 13251 Highway O, Dixon. The state, however, failed to raise this issue in the circuit court. "Issues raised for the first time on appeal are not preserved for appellate review." *Heifetz*, 554 S.W.3d at 397 n.10.

"good faith" exception, apply in circumstances where enforcing the rule would not achieve this deterrent effect. *Id.* at 920. The good faith exception allows evidence seized pursuant to an invalid warrant to be admitted if it was objectively reasonable for the officer to rely on the warrant. *State v. Sweeney*, 701 S.W.2d 420, 426 (Mo. banc 1985). An officer's personal beliefs or intentions are not considered; rather the officer's actions are evaluated objectively. *Id.*; *see also State v. Johnson*, 354 S.W.3d 627, 634 (Mo. banc 2011). If it is objectively reasonable for an officer to believe a warrant is valid, the good faith exception prevents the evidence obtained pursuant to the warrant from being suppressed. *Sweeney*, 701 S.W.2d at 426. However, it is not objectively reasonable for an officer to search beyond the scope of a warrant. *State v. Lucas*, 452 S.W.3d 641, 643 (Mo. App. 2014) (citing *Leon*, 468 U.S. at 918 n.19). It was not objectively reasonable for Detective Fenton to rely on the search warrant to seize Mr. Bales's phone at the sheriff's office because the warrant did not authorize a search outside the described address. *Coolidge*, 403 U.S. at 481.

To avoid this result, the dissenting opinion relies on *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), to assert the good-faith exception should apply. In *Sheppard*, a detective conducted a search for, and seized, a wide variety of items, including liquor, marijuana, clothes, wire, and rope pursuant to a warrant that, by its terms, authorized a search only for controlled substances. *Id.* at 985, 987. The Supreme Court held the evidence should not be excluded because it was objectively reasonable for the detective to believe the warrant authorized the search. *Id.* at 990. Importantly, however, the Supreme Court held the detective's belief was objectively reasonable because the judge issuing the

15

warrant expressly assured the detective the warrant authorized the search he requested. *Id.* at 989. So, the Supreme Court "refuse[d] to rule that an officer is required to disbelieve a judge who has just advised him, by word and by action, that the warrant he possesses authorizes him to conduct the search he has requested." *Id.* at 989-90.

In the case at hand, beyond the text of the warrant itself, the judge made no representations, much less assurances, about what the warrant authorized. Indeed, the record does not show Detective Fenton had any contact with the judge who issued the warrant, so the circumstances that rendered the detective's belief objectively reasonable in *Sheppard* are not present in this case. Detective Fenton merely prepared an affidavit that an assistant prosecuting attorney then used in applying for a search warrant. Detective Fenton had no assurances the search for which he sought authorization in his affidavit was the search described in the assistant prosecuting attorney's application or that it was the search authorized by the March search warrant.

Outside novel circumstances of the kind described in *Sheppard*, an officer executing a search warrant is required to know what the warrant says. *See Groh v. Ramirez*, 540 U.S. 551, 563 (2004) ("It is incumbent on the officer executing a search warrant to ensure the search is lawfully authorized and lawfully conducted."). Here, the March search warrant authorized and commanded officers to search "[a] cell phone located at 13251 Highway O Dixon, in Pulaski County Missouri." It did not authorize officers to search a cell phone found in Mr. Bales's possession at the Pulaski County Sheriff's office or elsewhere. Because the cell phone's seizure at the sheriff's office was outside the scope of the search warrant, the search warrant is not a valid legal basis for its seizure or search outside the

16

described premises and any belief of Detective Fenton otherwise is not reasonable. The good faith exception does not apply, and the evidence obtained from the seizure of the phone was properly suppressed.

**Conclusion**

Detective Fenton executed the March search warrant outside of its scope because he executed it at the sheriff's office rather than the location the warrant commanded officers to search. Because it was not objectively reasonable for Detective Fenton to execute the search warrant outside of its authorized scope, the good faith exception does not apply, and the circuit court did not err in suppressing the evidence obtained from the unreasonable seizure under the warrant. The circuit court's order is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

Russell, Ransom and Draper, JJ.,
concur; Wilson, C.J., dissents in separate
opinion filed; Powell and Fischer, JJ., concur
in opinion of Wilson, C.J.

17



# SUPREME COURT OF MISSOURI
## en banc

STATE OF MISSOURI,         )
                           )
          Appellant,      )
                           )
v.                          )      No. SC98376
                           )
JAMES CHRISTOPHER BALES,    )
                           )
         Respondent.    )

## DISSENTING OPINION

The warrant in this case described with adequate particularity the place to be searched (i.e., James Bales's cell phone) and the items to be seized (i.e., certain electronic files believed to be on that phone). Even if it did not, the good-faith exception to the exclusionary rule should apply because the officer who executed that warrant was the one who sought – and reasonably believed he had obtained – judicial authorization to search Mr. Bales's phone. For these reasons, I respectfully dissent.[1]

---

[1] The circuit court suppressed the evidence because it found the warrant failed to describe the cell phone with adequate particularity. The circuit court further held that the subsequent warrant could not be used to justify the seizure because it was the "fruit of the poisonous tree." Both of these conclusions were clearly erroneous, and the motion to suppress should have been overruled.

The principal opinion concludes that the warrant identified Mr. Bales's residence as the place where the search was to be conducted. A plain, commonsense reading of the search warrant refutes that argument. The search warrant states:

> Phone messages, text messages, social media networks, Instagram photos, Facebook messages, passwords to the device, global positioning system coordinates, emails, phone logs, SIM cards, photo galleries, voicemails, or any other evidence pertaining to the crime kept in the following described places in the County aforesaid, to wit:

> A cell phone located at, 13251 Highway O Dixon, in Pulaski County Missouri. This cell phone is described as Black Samsung with black case.

The first paragraph above identifies (with what all parties concede was adequate particularity) the things to be searched for, i.e., the things to be seized. The second paragraph identifies the place to be searched, and the subject of that sentence is "[a] cell phone[.]" The reference to Mr. Bales's address merely modifies that subject. Together with the following sentence, the address further identifies the cell phone referred to in the first sentence.[2]

The warrant's description of the "cell phone" was sufficiently particular to satisfy constitutional requirements. The warrant gives the make and color of the phone, a description of the case, and the location (i.e., Mr. Bales's residence) where Detective Thomas Fenton twice saw the phone when Mr. Bales showed it and some of its contents to him. To require additional information such as a model and/or serial number would

---

[2]  The inclusion of this additional description was not without purpose. Presumably, the address was included to meet the particularity requirement by using all of the information at Detective Fenton's disposal to identify the cell phone. Indeed, the circuit court found the particularity requirement was not met even with Mr. Bales's address included in the warrant. Accordingly, the address was not irrelevant to the warrant's validity.

2

mean that Detective Fenton should have seized and inspected the phone prior to seeking the warrant. It cannot be that the constitution demands such a warrantless intrusion before a warrant can issue.

In *State v. Brown*, 708 S.W.2d 140 (Mo. banc 1986), this Court rejected a particularity challenge even though the warrant only described the items to be seized generally as an "XL–12 Homelite," a "Bench grinder (Dark gray)," and three "saw sprocket[s]." *Id.* at 143. "These descriptions were sufficient to ensure the property taken was not left to the caprice of the officer conducting the search and ***we do not find the warrant fatally defective simply because the descriptions could have been more precise, by for example indicating brand name or serial number***." *Id.* (emphasis added). *See also State v. Johnson*, 576 S.W.3d 205, 216, 223 (Mo. App. 2019) (deeming a warrant identifying only "all cell phones" sufficiently particular). When confronted with a particularity challenge, it "is enough if the description is such that the officer with a search warrant can, with reasonable effort ascertain and identify the place intended [to be searched]." *Steele v. United States*, 267 U.S. 498, 503 (1925).

Here, the warrant offers more than adequate particularity, and all that Detective Fenton reasonably was able to provide in his affidavit. The reference to Mr. Bales's residence (where Detective Fenton twice had been shown the cell phone and some of its contents) was not included for the purpose of limiting the location where the search was to occur. Instead, it was included to further specify the cell phone in question. The central characteristic of a cell phone is that it is mobile, i.e., that it is more likely to be found with its owner/user than in any particular location. To say that a cell phone is to be

3

found at a place, or can only be searched if found at that place, is precisely the opposite of the commonsense reading this Court is supposed to give a warrant. *See State v. Neher*, 213 S.W.3d 44, 49 (Mo. banc 2007) (explaining a warrant is to be examined in a commonsense, rather than hypertechnical, manner). In the end, the principal opinion's analysis exalts form over substance.[3]

It seems likely that the principal opinion may have been steered off course by its misunderstanding of the term "premises" as used in the last paragraph of the warrant. That paragraph states:

> NOW THEREFORE, these are to command you that you *search the said premises above described* to including [sic] text messages, passwords, global positioning system, emails, phone records, or all other digital folders and, if said above described articles or any part thereof be found on said premises by you, that you seize the same and take same into your possession….

[Emphasis added]. The principal opinion concludes that the use of the word "premises" means that the warrant can be referring only to "real property or a building or buildings."

---

[3]   This is not the only basis for concluding that the inclusion of Mr. Bales's address was intended to further identify the cell phone and not to limit where the search of the phone could occur. A forensic examination of Mr. Bales's cell phone of the sort authorized by this warrant, and the subsequent seizure and preservation of the specified files, presumably requires hardware and software that Detective Fenton (who was to execute the warrant) does not routinely carry with him and expertise he cannot be presumed to have. Instead, the warrant entitled him to take the cell phone from where it was found to wherever Detective Fenton reasonably believed the warrant could be executed most effectively. *See Dalia v. United States*, 441 U.S. 238, 257-58 (1979) (finding officers have discretion in executing a valid warrant and that discretion is reviewed only for reasonableness under all circumstances). If Mr. Bales's real complaint is that he should have recovered his cell phone more quickly, as he seems to have argued at the circuit court, the proper remedy is to compel the state to return it or justify its continued possession. This was not the issue on which the circuit court ruled, however, and, in any case, would not have justified application of the exclusionary rule.

This is incorrect. The introductory phrase of this portion of the warrant, including the arcane use of the word "premises," is taken word-for-word from this Court's Form No. 39B. As *Black's Law Dictionary* explains,[4] the word "premises" in a legal document means: "Matters (usu. preliminary facts or statements) previously referred to in the same instrument."[5] *Premises*, BLACK'S LAW DICTIONARY (11th ed. 2019). As a result, the word "premises" in this warrant (and in this Court's Form 39B) simply refers to the matters previously set forth in the warrant, i.e., the description of the cell phone as the place to be searched. Plainly, this Court's forms have failed to keep pace with modern parlance and technology, but the fact that the circuit court could have done a better job of adapting the form does not make the warrant unconstitutionally vague. *State v. Douglass*, 544 S.W.3d 182, 192 (Mo. banc 2018) (finding the particularity requirement is satisfied "if the warrant's description enables the searcher to reasonably ascertain and identify" the place to be searched and the items to be seized).

---

[4] Although this Court normally consults a standard English language dictionary when determining the ordinary meaning of a word, this Court has used *Black's Law Dictionary* when defining *legal terms*. *See State ex rel. MoGas Pipeline, LLC v. Mo. Pub. Serv. Comm'n*, 366 S.W.3d 493, 498 (Mo. banc 2012) (explaining that legal dictionaries "might be expected to be more helpful" in understanding legal terms). Because the document being reviewed (i.e., the search warrant) is a legal form and the word being used (i.e., "premises") is a legal term, *Black's Law Dictionary* is more helpful in understanding the usage of "premises" in Form No. 39B.

[5] Hundreds of appellate and likely thousands of circuit court decisions use the word "premises" in this way. *See, e.g.*, *State ex rel. Referendum Petitioners Comm. Regarding Ordinance No. 4639 v. Lasky*, 932 S.W.2d 392, 392 (Mo. banc 1996) ("The Court, being fully advised in the premises, dispenses with all further procedure in the matter in the interest of justice."); *Garrison v. Jones*, 557 S.W.2d 247, 249 (Mo. banc 1977) (citing circuit court orders with the same language). One may assume none of these were intended to convey that the court was advised in a building on real property but, rather, that the court was advised of the foregoing information.

5

Even if the description of Mr. Bales's cell phone rendered the search warrant invalid, the good-faith exception to the exclusionary rule applies to render the data found within the cell phone admissible. The good-faith exception provides "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant" should not be suppressed pursuant to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 922 (1984). However, "if the good faith exception is to apply, the officers executing the warrant may search 'only those places and for those objects that it was reasonable to believe were covered by the warrant.'" *State v. Lucas*, 452 S.W.3d 641, 643 (Mo. App. 2014) (quoting *Leon*, 468 U.S. at 918 n.19).[6]

In *Massachusetts v. Sheppard*, 468 U.S. 981 (1984), the United States Supreme Court found the good faith exception applied where the warrant was subsequently

---

[6]  *United States v. Alberts*, 721 F.2d 636, 639 (8th Cir. 1983), does not support the circuit court's decision and, in fact, is the converse of the present case. In *Alberts*, the officers obtained a warrant authorizing the search of a specific residence for garbage bags they believed contained evidence. *Id.* at 638. The owner of the residence, however, informed the officers that the garbage bags had been moved from her house and directed them towards another residence. *Id.* The officers ultimately searched (and seized items from) garbage bags found at the second residence, i.e., a residence other than the one listed in the search warrant. *Id.* The court specifically rejected the argument that "the garbage bags constituted the place to be searched…." *Id.* at 639. Instead, the court found that the "place authorized to be searched under this warrant was the Linda Alberts Thompson residence" and the things to be seized were the contents of certain garbage bags there. *Id.* As a result, the court held that the officers exceeded the scope of the search warrant by searching a different residence for the garbage bags. *Id.* Here, on the other hand, the place to be searched plainly was the cell phone – an inherently mobile device – not a residence. Had the warrant in *Alberts* identified with constitutionally adequate particularity the garbage bags as the place to be searched (as the warrant in this case adequately described the cell phone as the place to be searched), the officers in *Alberts* would have been authorized to seize and search those garbage bags anywhere they were lawfully found just as Officer Denton was authorized to seize this phone – wherever it was lawfully found – for the purpose of conducting the search authorized by this warrant. Notably, because the warrant at issue listed the cell phone as the place to be searched, the warrant did not authorize Detective Fenton to search other locations – including Mr. Bales's residence – to find the cell phone.

invalidated because it failed to particularly describe the items to be seized. *Id.* at 990-91.

The Supreme Court emphasized that the officer who conducted the search was also the

officer who applied for the search warrant. *Id.* at 989. Thus, "the officer who directed

the search[] knew what items were listed in the affidavit presented to the judge, and he

had good reason to believe that the warrant authorized the seizure of those items." *Id.* at

989 n.6. The Supreme Court explained,

> The officers in this case took every step that could reasonably be expected
> of them. Detective O'Malley prepared an affidavit which was reviewed and
> approved by the District Attorney. He presented that affidavit to a neutral
> judge. The judge concluded that the affidavit established probable cause to
> search Sheppard's residence, App. 26a, and informed O'Malley that he
> would authorize the search as requested. O'Malley then produced the
> warrant form and informed the judge that it might need to be changed. He
> was told by the judge that the necessary changes would be made. He then
> observed the judge make some changes and received the warrant and the
> affidavit. At this point, a reasonable police officer would have concluded,
> as O'Malley did, that the warrant authorized a search for the materials
> outlined in the affidavit.

*Id.* at 989. Accordingly, the Supreme Court concluded, "we refuse to rule that an officer

is required to disbelieve a judge who has just advised him, by word and by action, that

the warrant he possesses authorizes him to conduct the search he has requested." *Id.* at

989-90.[7]

---

[7] *Sheppard* makes clear that an officer has no duty to inspect the warrant and determine for him
or herself what search it authorizes and what may be seized where the officer executing the
warrant already knows those things because he or she was the one who provided the affidavit on
which the warrant was issued. *Sheppard*, 468 U.S. at 989-90. ("Whatever an officer may be
required to do when he executes a warrant without knowing beforehand what items are to be
seized, we refuse to rule that an officer is required to disbelieve a judge who has just advised
him, by word and by action, that the warrant he possesses authorizes him to conduct the search
he has requested.") (footnote omitted). There, as here, "the officer who directed the search[]
knew what items were listed in the affidavit presented to the judge, and he had good reason to
believe that the warrant authorized the seizure of those items." *Id*. at 989 n.6.

As in *Sheppard*, Detective Fenton took every step in this case that could be reasonably expected of him. Detective Fenton saw the cell phone at issue when Mr. Bales twice played a video for him on the phone. Based on that video and his experience, Detective Fenton completed an affidavit requesting a warrant to search the contents of that cell phone. In his affidavit, Detective Fenton included all of the details at his disposal to describe the cell phone, such as the owner of the phone, the maker of the phone, the color of the phone and the case, and Mr. Bales's address as the owner/user of the phone. The judge determined probable cause existed to search the cell phone and issued the search warrant outlined in Detective Fenton's affidavit. Based on this, Detective Fenton reasonably believed the warrant authorized him to conduct the search he requested.

When Mr. Bales showed up at the police station and again took out his phone to show Detective Fenton a video, Detective Fenton immediately identified it as the phone he had seen previously and the object of the search warrant he had obtained. Was he supposed to trail Mr. Bales to his residence and search the phone there? No. Because Detective Fenton had specifically requested ***and obtained*** a warrant to search that particular phone, he was objectively reasonable in believing he was authorized to seize it for the purpose of searching it for the items specified and seizing them if they were found. If the warrant was defective because it failed to identify the cell phone with adequate particularity, the fault lay with the judge and not Detective Fenton. As a result, the good faith exception to the exclusionary rule must apply. *Sheppard*, 468 U.S. at 990 ("The exclusionary rule was adopted to deter unlawful searches by police, not to punish

8

the errors of magistrates and judges.") (quotation marks and alterations omitted). At every step, Detective Fenton did all he could to comply with the constitutional requirements. He committed no misconduct at all, let alone what the Supreme Court in *Herring v. United States*, 555 U.S. 135, 144 (2009), described as the sort of "deliberate, reckless, or grossly negligent conduct, or in some circumstances, recurring or systemic negligence" that the exclusionary rule is designed to deter.

For the reasons set forth above, I respectfully dissent and would hold that the circuit court erred in sustaining Mr. Bales's motion to suppress.

_____
Paul C. Wilson, Chief Justice